Robert R. LAYTON, Jr., M.D., and Kent General Hospital (Incorporated), a corporation of the State of Delaware, Defendants Below, Appellants,

v.

Thomas Edward ALLEN and Anna Pearl Allen, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Sept. 12, 1968.

William Prickett, of Prickett, Ward, Burt & Sanders, Wilmington, for Kent General Hospital, defendant below, appellant.

H. James Conaway, Jr., and William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for Robert R. Layton, Jr., defendant below, appellant.

N. Maxson Terry, Jr., of Terry & Terry, Dover, for plaintiffs below, appellees.

CAREY and HERRMANN, JJ., and DUFFY, Chancellor, sitting.

HERRMANN, Justice:

The appeal in this medical malpractice case presents the question of whether the Statute of Limitations commenced to run when the wrongful act or omission was committed by the practitioner or when the harm first manifested itself to the patient.

This is a case of first impression in this Court.

I.

For present purposes, these facts are accepted:

In 1958, the plaintiff [1] underwent an abdominal operation for the correction of hernia. The defendant surgeon, in performing the operation with the assistance of employees of the co-defendant hospital, left a metallic hemostat, several inches long, inside the plaintiff's body. The plain-

---

1. The plaintiff's husband joins as party plaintiff asserting loss of consortium.

For simplicity, reference will be made herein to the principal plaintiff only.

tiff recovered from the operation without complication, until about seven years later. In November 1965, she began to experience abdominal pain. She consulted another physician, having terminated her relationship with the defendant surgeon about a month after the operation. Treatment for the recurring pain and x-rays led to an emergency operation in August 1966. The hemostat was then discovered in the plaintiff's abdomen and was removed. Three subsequent operations were required to repair the damage to the plaintiff's body caused by the hemostat and the passage of time.

It is undisputed that the plaintiff's first onset of pain occurred in 1965 and that reasonable care and diligence on her part would not have led to the discovery of the hemostat prior to that date. It is also undisputed that neither the surgeon nor the hospital was aware of the mishap at any time before the corrective surgery in 1966.

In 1966, the plaintiff brought suit against the surgeon and the hospital, alleging the negligence of the surgeon in leaving the hemostat in her body and the negligence of the hospital in that its employees failed to account for the hemostat during and after the operation. Both defendants denied negligence and set up the Statute of Limitations as an affirmative defense. The plaintiff moved to strike the defense and each defendant countered with a motion for summary judgment. The Superior Court granted the plaintiff's motion and denied the defendants' motions. See 235 A.2d 261. This appeal followed.

## II.

The Statute of Limitations governing this case is 10 Del.C. § 8118:

"§ 8118. Personal injuries

"No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained."

In passing, we note the conflict in the authorities as to whether medical malpractice cases are governed by the time limitations provided for tort actions or for those governing contract actions. See Annotation 80 A.L.R.2d 320. We approve the ruling of the Superior Court on this question in Patterson v. Vincent, 5 Terry 442, 61 A.2d 416 (1948).

■ The threshold question is whether, in its application to this case, there is ambiguity in § 8118 as to when the plaintiff's "injury" was "sustained". We think that there is ambiguity.

In view of the general rules that the limitation period is usually deemed to run from the time of the wrongful act or omission, but that there can be no right of action until there has been injury, the ambiguity becomes especially apparent when, as here, the time of the wrongful act or omission and the time of the harm do not necessarily coincide. Compare Prosser on Torts (3d Ed.) pp. 146–148. In the instant case, the language of § 8118 may be read to mean that the plaintiff's "injury" was "sustained" (1) when the hemostat was left negligently in her body; or (2) when, over a period of time, the harmful condition gradually developed and came into existence by reason of the presence of the foreign object in her body; or (3) when the harm first manifested itself.

The defendants argue that § 8118 is clear and unambiguous and can have but one meaning in its application to this case: that the plaintiff's "injury" was "sustained" when the hemostat was left in her body; that, therefore, her right of action was forever barred two years thereafter although she did not know, and by reasonable diligence could not have known, of the existence of the hemostat in her abdomen. In support of their contention that § 8118 is clear and unambiguous, the defendants cite Nigro v. Flinn, 8 W.W. Harr. 368, 192 A. 685 (1937); Patterson v. Vincent, 5 Terry 442, 61 A.2d 416 (1948); DiNorscia v. Tibbett, 11 Terry 118, 124

A.2d 715 (1956); Lewis v. Pawnee Bill's Wild West Co., 5 Pennewill 397, 61 A. 868, aff'd 6 Pennewill 316, 66 A. 471 (1907); Hurwitch v. Adams, 2 Storey 247, 155 A.2d 591 (1959). Those cases dealt with other facets of § 8118. None involved the question of when an "injury" is "sustained" under § 8118; more importantly, none decided when an "injury" such as that involved in this case is "sustained" within the meaning of the Statute. None of the earlier cases, therefore, is determinative here. We write on a clean slate.

This is not the usual tort case in which some physical impact serves to notify the plaintiff of the violation of his rights before the expiration of the period of limitations. This case involves an injury of the "inherently unknowable" type—the product of a period of time rather than a point of time. The plaintiff in this case was "blamelessly ignorant" of the act or omission and injury complained of; she had no way of knowing that her rights had been violated until the first pain was experienced about seven years after the operation; and the injurious condition of which she complains developed over the intervening years and did not exist at the point of time when the wrongful act or omission occurred. Compare Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); United States v. Reid (5 Cir., 1958) 251 F.2d 691.

The basic question before us is this: is it reasonable to conclude that the General Assembly, in wording § 8118, intended that such an "inherently unknowable" injury to such "blamelessly ignorant" plaintiff should be deemed "sustained", and an action thereon barred by the Statute, before the harm had manifested itself? We think not.

To say that the plaintiff has two years after the "claimed" injury within which to maintain an action, and, at the same time, to say that the injury must be "claimed" before she has, or can reasonably be expected to have, knowledge of any wrong inflicted upon her, is contrary to reason and justice. It is unreasonable, we think, to assume that the General Assembly intended to grant a remedy for a wrong but to bar the remedy before the wrong was physically ascertainable by due diligence. To ascribe to the General Assembly any such unjust intent in the framing of § 8118 seems to us completely unreasonable. Compare Frombach v. Gilbert Associates, Inc., Del., 236 A.2d 363 (1967).

We find support for our view in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). That case was a Federal Employers' Liability Act case involving silicosis, in which it was contended that the plaintiff had undoubtedly, though unwittingly, contracted silicosis so long before the filing of the action as to be barred by the period of limitations. The Court held that the plaintiff was injured "only when the accumulated effects of the deleterious substance manifested themselves," stating:

"If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability. * * *

"We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights."

The Pennsylvania Statute of Limitations governing personal injuries is similar to ours[2] in that it runs from the time "when the injury was done." In Ayres v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959), the Supreme Court of Pennsylvania had the same problem now confronting us and it there said:

> "This statute, as all statutes, of course, must be read in the light of reason and common sense. In its application to a given set of circumstances, it must not be made to produce something which the Legislature as a reasonably-minded body could never have intended."

The Pennsylvania Supreme Court thereupon construed its Statute of Limitations to mean: "The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable."

▪▪ Upon the bases of reason and justice, we hold that when an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is "sustained" under § 8118 when the harmful effect first manifests itself and becomes physically ascertainable. Translated in the terms of this case, we hold that the limitations period commenced to run when the plaintiff first experienced pain caused by the unknown foreign object. Since that event occurred in 1965 and this action was filed in 1966, the action is timely.

### III.

▪▪ Thus, we reach the same result as did the Court below, but upon different

grounds. The Superior Court founded its conclusion upon "an analogy" to the doctrine of fraudulent concealment, based upon a constructive fraud arising from the physician-patient relationship. See 235 A.2d 261, 265. We are unable thus to adapt the doctrine of fraudulent concealment to a situation where, as here, there is no allegation that the practitioner either had actual knowledge of the wrong done or acted affirmatively in concealing the facts from the patient. Such scienter and affirmative action are generally deemed to be essential elements for the application of the doctrine of fraudulent concealment in a malpractice case. The Superior Court noted the absence of those elements but, under the circumstances of the case, equated negligent concealment with fraudulent concealment. In our view, the analogy drawn by the Superior Court is not reasonably applicable. See Annotation 80 A.L.R.2d 368, 407. Therefore, we must note our disagreement with the lower Court's rationale.

### IV.

The defendants contend that the result we reach here is in direct conflict with three rules well established in this State:

▪▪ It is first pointed out that our courts have consistently taken the position that they will not engage in judicial legislation by creating exceptions to a statute of limitations when the provisions of the statute are clear and unambiguous, citing, inter alia, Patterson v. Vincent, 5 Terry 442, 61 A.2d 416 (1948); Lewis v. Pawnee Bill's Wild West Co., 6 Pennewill 316, 66 A. 471 (1907); Hurwitch v. Adams, 2 Storey 247, 155 A.2d 591 (1959); Vari v. Food Fair Stores, etc., Del., 205 A.2d 529 (1964). We reaffirm that principle. For

---

2. § 8118 is unusual in that most statutes of limitations governing personal injury claims commence to run from the time when the cause of action "accrues", whereas § 8118 runs from the time when it is claimed that the injury was "sustained". It is noteworthy that most of our other statutes of limitations run from the time the cause of action accrues,

E. g., 10 Del.C. §§ 8104, 8106, 8108, 8110, 8114; and that § 8118 (originally enacted in 1897 as 20 Del.Laws Ch. 594, § 1) removed personal injury actions from the Statute of Limitations governing trespasses generally, the latter being an "accrual" statute now appearing as 10 Del.C. § 8106.

the reasons stated above, however, we find the provision of § 8118 here under scrutiny to be ambiguous in its application to this case. In the light of such ambiguity, our duty to construe the Statute is beyond ·question.

■ The construction of a statute of limitations is not the creation of an exception in violation of the legislative function. It is the well recognized function of the courts to construe statutes of limitations so as to establish just and reasonable guidelines for different classes of cases in the light of the general policy of repose. 1 Wood Limitation of Actions (4th Ed.) 685. Our holding here is no more an exception and encroachment upon the legislative function than the judge-made rule, long established and unquestionably accepted, that fraudulent concealment tolls the running of the statute of limitations until such time as the cause of action is discovered or could have been discovered by the exercise of due diligence. See Lieberman v. First National Bank of Wilmington, 2 Pennewill 416, 45 A. 901, 48 L.R.A. 514 (1900); Giordano v. Czerwinski, Del., 216 A.2d 874 (1966).

The second argument of the defendants that must be met in this connection is the rule recognized by this Court in Mastellone v. Argo Oil Corporation, 6 Terry 517, 76 A.2d 118, aff'd 7 Terry 102, 82 A.2d 379 (1951), a stock conversion case, that lack of knowledge of the existence of a cause of action does not toll the running of the statute of limitations against it. The defendants also cite in this connection Lieberman v. First National Bank of Wilmington, 2 Pennewill 416, 45 A. 901 (1900), a suit on a bond; Bovay v. H. M. Byllesby & Co., 27 Del.Ch. 33, 29 A.2d 801 (1943), an action to recover money from a fiduciary and for an accounting; Leibowitz v. Hicks, Del.Ch., 207 A.2d 371 (1965), an action on a bond; and Klein v. Lionel Corp. (D.C. Del., 1955) 130 F.Supp. 725, a suit for damages under anti-trust laws. All of the cited cases involved statutes of limitations of the "accrual" type. None of the cited cases was a personal injury case involving § 8118; specifically, none involved an inherently unknowable injury sustained by a blamelessly ignorant plaintiff as herein defined.

■ The cited cases are inapposite because, as construed herein and as applied to the facts and circumstances of this case, § 8118 is wholly incompatible with the rule that ignorance does not toll the running of the limitations period. By virtue of § 8118 itself, as construed herein, we hold that the rule of ignorance has no application in a case involving an inherently unknowable injury sustained by a blamelessly ignorant plaintiff as herein defined. We expressly limit this holding to such case; we do not intend any broad relaxation of the rule of ignorance as exemplified by *Mastellone;* we hold only that § 8118, as herein construed, bars the application of that rule in a case of this kind.

Finally, it is said that the result we reach here is contrary to the law's policy of repose, designed to protect parties from the hazards of stale claims. It cannot be said that the plaintiff in this case slept on her rights before she knew, or by reasonable diligence could know, that she had such rights. In this context, therefore, it cannot be said that she brings a stale claim. Under the circumstances, we have the duty of drawing the delicate line of adjustment between the duly diligent plaintiff and the wrongdoer. Where choice must be made between the defendants' problems of lost evidence, faded memories, and missing witnesses, on the one hand, and a deprivation to the plaintiff of any and all remedy for the wrong done her, on the other, the law must be construed in favor of the blamelessly ignorant plaintiff and against the interests and convenience of the wrongdoer.

## V.

Our construction of § 8118 is consonant with a strong modern trend, contrary to earlier weight of authority, amounting to a

"waive of decisions" holding that the cause of action does not "accrue" in a malpractice case until the plaintiff has discovered it. See Prosser on Torts (3d Ed.) pp. 147–148. This has become known as the time-of-discovery rule as contrasted with time-of-wrongful-act rule.[3] In recent years, in the determination of when a cause of action accrues in a malpractice case, the discovery rule has been adopted in New Jersey [Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961)]; in Maryland [Waldman v. Rohrbaugh, 241 Md. 137, 215 A.2d 825 (1966)]; and in an increasingly large number of other jurisdictions. See Louisell and Williams, "Trial of Medical Malpractice Cases" §§ 1306, 1307. While we do not adopt the discovery rule as such because, as has been noted, § 8118 is not an "accrual" statute, it is noteworthy that the result we reach is consistent with the strong trend of modern authority on the subject.

\* \* \* \* \* \*

For the reasons stated, the judgment below is affirmed and the cause remanded for further proceedings not inconsistent herewith.

3. As examples of the latter rule, see Tessier v. United States (1 Cir., 1959) 269 F. 2d 305, and Pasquale v. Chandler, 350 Mass. 450, 215 N.E.2d 319 (1966), cited by the defendants.