Kenneth STAGG, Plaintiff,

v.

BENDIX CORPORATION, et al., Defendants.

Superior Court of Delaware, New Castle County.

Submitted: Oct. 24, 1983.

Decided: Jan. 4, 1984.

Thomas C. Crumplar and Douglas B. Canfield of Jacobs & Crumplar, Wilmington, for plaintiff.

Richard K. Herrmann and Phebe S. Young of Bayard, Brill & Handelman, Wilmington, for defendant, Bendix Corporation.

WALSH, Judge.

In this asbestos action, Bendix Corporation (Bendix), one of several defendants claimed to have contributed to the plaintiff's asbestos-related ailment, has moved to dismiss the complaint as untimely filed under the applicable statute of limitations (10 *Del.C.* § 8119). Since material outside the pleadings has been submitted by both parties, the motion will be treated as a motion for summary judgment under Superior Court Civil Rule 56(b). As the nonmovant, plaintiff is entitled to the benefit of inferences to be drawn from any factual disputes which underlie the motion.

Plaintiff claims to have been exposed to various asbestos products during most of his work life, spanning forty-four years beginning in 1939. Specifically, he claims he was exposed to brake linings containing asbestos from 1947 to 1952 and from 1956 to 1972. After 1972, plaintiff was exposed to asbestos products manufactured by parties other than Bendix. Bendix admittedly has manufactured brake linings during those years and, for present purposes, concedes that plaintiff may have been exposed to its product prior to 1973. Bendix is charged with negligence in the manufacture and distribution of asbestos products and the failure to provide potential users with notice of its hazards.

Bendix builds its statute of limitations argument in unusual fashion. It begins by accepting plaintiff's claim that his exposure to its brake linings predated 1973. It next relies upon "medical evidence to be found in asbestos cases" to establish an asbestosis etiology to the effect that scarification of the lungs occurs "about six months" after exposure. In plaintiff's case, final exposure to Bendix's product occurred not later than 1973 and, the argument runs, since the present action was not filed until 1982, it is clearly time barred under Delaware's two year period of limitations.

Plaintiff asserts, through affidavits supporting his position, that the complaint was filed within two years of the time he first became aware that he had been injured through asbestos exposure. In his own affidavit plaintiff contends that it was in "the year or two prior to 1982" that he experienced some difficulty in breathing and considered a possible asbestos connection. But he claims to have been assured by physicians who examined him that he was not suffering from asbestosis. It was only after he consulted Dr. Susan Daum, a specialist in asbestosis diagnosis, in May, 1982, that he was advised that he had asbestosis. Dr. Daum's affidavit, claims that asbestos "does not usually develop until 15 to 25 years after exposure" and she states that she is aware of no report in the medical literature on asbestosis which indicates the condition has developed within six months of asbestos exposure.

While the parties may be in disagreement concerning the etiology of asbestosis, for present purposes plaintiff is entitled to the assumption that his condition did not clinically manifest itself earlier than two years before the action was filed on December 29, 1982. But, the record also supports Bendix's assertion that plaintiff's exposure to its product did not occur after 1973. The question is then posed: Is a claim for harmful asbestos exposure caused by a particular product barred by the Delaware personal

injury statute of limitations, where the claim is filed within two years of discovery through clinical manifestation but beyond the period of exposure to that product? Put another way in the context of this case, where a plaintiff seeks recovery from multiple defendants charged with exposing him to their product over an extended period of time, does the claim against each individual defendant, for statute of limitation purposes, date from last exposure to that defendant's product even though manifestation occurs years later?

No Delaware decision has addressed the question of when the statute of limitations begin to run in cases of ailments of prolonged latency. The parties agree that the decision in *Layton v. Allen,* Del.Supr., 246 A.2d 794 (1968), finds some application since it dealt with the blamelessly ignorant plaintiff who has sustained an inherently unknowable injury. Bendix argues, however, that the *Layton* rule should not be extended to cover the claims of remote users of products and contends that recent legislative efforts to enlarge the limitation period for the filing of "Agent Orange" claims suggests a legislative recognition that § 8118 does not lend itself to a time of manifestation rationale for product diseases.

Although *Layton* involved a medical malpractice action and its holding has been largely eroded by specific limitations periods imparted by the Delaware Medical Malpractice Act (18 *Del.C.* Ch. 68), its rationale continues to be viable. It has proved to be the seminal decision leading to rulings, in cases other than medical malpractice, which have permitted a blamelessly ignorant plaintiff, who relies upon the skill and expertise of another, to file suit, within two or three years from the time when the negligent act was, or should have been, discovered. *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del.Supr., 330 A.2d 130 (1974); *Pioneer Nat. Title Ins. Co. v. Child, Inc.,* Del.Supr., 401 A.2d 68 (1979); *Rudginski v. Pullella,* Del.Super., 378 A.2d 646 (1977); Cf. *Lembert v. Gilmore,* Del.Super., 312 A.2d 335 (1973).

It is true, as Bendix asserts, that the Court in *Layton* did not intend a broad relaxation of the rule of ignorance as exemplified in *Mastellone v. Argo Oil Corp.,* Del. Supr., 82 A.2d 379 (1951). But *Layton* has significance here because of its reliance upon *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) which interpreted the statute of limitations in connection with a claim under the Federal Employers Liability Act. The *Urie* decision also involved a lung disease of slow progression, silicosis. The Court, in *Urie* ruled that a claimant should not be charged with knowledge of the slow disintegration of his lungs from causes "unknown and inherently unknowable."

■ Medical authorities seem to agree that the inhalation of asbestos fibers results in some change in lung tissue. But it does not follow that such contact is a demonstrable injury for which damages are recoverable. Inhalation may, or may not, produce deleterious results depending upon many factors including continued exposure and the general health of the worker. To require the exposed asbestos worker to file a claim within two years of any exposure regardless of its effect, would subject him to the proving of damages based on speculation and possibility with little hope of meeting the required burden of proving damages with reasonable probability. To so apply the statute of limitations would result in "substantial unfairness." *Pierce v. Johns-Manville Sales Corp.,* Md.App., 296 Md. 656, 464 A.2d 1020, 1026 (1983). *Layton, supra.*

Bendix also relies upon an affidavit it has "borrowed" from another case which involved a dispute concerning insurance coverage liability for asbestos claims. This affidavit by Elliott Kagan, M.D. supports the exposure theory of insurance responsibility on the theory that, "as to claimants who manifest clinical symptoms, each injury begins virtually simultaneously with or shortly after the exposure to asbestos fibers." Implicit in Dr. Kagan's position, however, is the recognition that asbestos contact which never results in any physical

manifestation of injury is legally meaningless. It was so decided by this Court in *Nutt v. A.C. & S.,* Del.Super., 466 A.2d 18 (1983). More to the point, Dr. Kagan's affidavit addresses the question of when an unknowable medical injury arises, not when a legal injury is sustained. This distinction underlies the basis for permitting claims for inherently unknowable injuries by persons who are blamelessly ignorant.

A further consideration suggests that Bendix's construction of the statute is ill suited to asbestos-related claims. Because, as previously noted, the immediate effect of asbestos exposure is difficult to evaluate, the latency period tends to be prolonged. Dr. Daum indicates it may be as long as 25 years. In their work life, asbestos workers may be exposed to a variety of asbestos products manufactured by a multiplicity of suppliers. Typically, the supplier defendants seek contribution from each other by way of cross claims. The relative fault of a particular defendant may involve the role of that defendant's product in the employment history. Early exposure which, in itself, might be harmless if isolated takes on added significance when later exposure to the same or other asbestos products creates a virulency which otherwise might not occur. Thus, the causative effect of the early exposure may not be ascertainable until a clinical manifestation permits evaluation of total exposure. *Wigginton v. Reichold Chemicals, Inc.,* Ill.App., 133 Ill.App.2d 776, 274 N.E.2d 118 (1971). The injury in such cases is the disease itself. *Locke v. Johns-Manville,* Va.Supr., 221 Va. 951, 275 S.E.2d 900 (1981).

Finally, I am not persuaded that the enactment of legislation dealing with "Agent Orange" litigation pending in New York has any significant bearing on the present question. The synopsis of the bill (64 Del. Laws Ch. 25) indicates that it is a "departure from the usual Delaware rule against

'date of discovery' " but also notes that the two year period "once the veteran has been informed" is consistent with other Delaware laws. Significantly, the bill does not seek to amend § 8118 but to add a new limitations provision dealing solely with "Indochina Toxic Herbicide Exposure." It can hardly be argued that the General Assembly was attempting to remedy an observed defect in § 8118.

It should be emphasized that the application of the *Layton* rationale to asbestos cases does not result in a "time of discovery" overlay on all such claims. The test is an individual one, with each claimant bearing the burden of demonstrating why the statute is not a bar. In each case the plaintiff must show not only an ignorance of the cause but also that he reacted reasonably and promptly in seeking a diagnosis of any untoward condition which is later confirmed medically as being asbestos related. This issue may prove to be a factual one to be resolved at trial. It is sufficient in this case to note that the plaintiff's proofs establish his blameless ignorance of an inherently unknowable injury.

In summary, I conclude that given the prolonged and inherently unknowable latency of plaintiff's disease, the period of limitations became effective when he was chargeable with knowledge that his physical condition was attributable to asbestos exposure. Since his complaint was filed within two years of such knowledge, it is timely. Bendix's motion for summary judgment must accordingly be denied.

IT IS SO ORDERED.