IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GI ASSOCIATES OF DELAWARE, P.A., ADVANCE ENDOSCOPY CENTER, LLC, and NATWARLAL RAMANI, M.D., | § § § § § | No. 182, 2020 |
| | § § | Court Below: Superior Court of the State of Delaware |
| Defendants Below, Appellants, | § § | C.A. No. N18C-04-158 |
| v. | § § § | |
| MONICA KING ANDERSON, Individually and as Personal Representative of the ESTATE OF WILLIAM KING, STEPHANIE KING, HEATHER GUERKE, and AMBER WITHROW, | § § § § § § § | |
| Plaintiffs Below, Appellees. | § § | |

Submitted: December 9, 2020
Decided: February 15, 2021

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN** and **TRAYNOR**, Justices; and **HARTNETT**, Judge,[*] constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Bradley J. Goewert, Esquire, and Lorenza A. Wolhar, Esquire (*Argued*), Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware, for Appellants, GI Associates of Delaware, P.A., Advance Endoscopy Center, LLC, and Natwarlal Ramani, M.D.

---

[*] Sitting by designation under Del. Const. Art. IV, § 12.

Timothy E. Lengkeek, Esquire (*Argued*), and Natalie Wolf, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Appellees, Monica King Anderson, Individually and as Personal Representative of the Estate of William King, Stephanie King, Heather Guerke, and Amber Withrow.

**VAUGHN**, Justice:

# I.   INTRODUCTION

This is an interlocutory appeal in a medical negligence case. The Defendants-Appellants are GI Associates of Delaware, P.A., Advance Endoscopy Center, LLC, and Natwarlal Ramani, M.D. ("Dr. Ramani") (collectively, the "Defendants"). The Plaintiffs-Appellees are Monica King Anderson, the Estate of William King, Stephanie King, Heather Guerke, and Amber Withrow (collectively, the "Plaintiffs").

On April 4, 2011, Dr. Ramani performed a colonoscopy on William King. At a follow up visit on April 26, 2011, Dr. Ramani recommended that Mr. King return for his next colonoscopy in three to five years. Mr. King followed that advice and returned to Dr. Ramani for another colonoscopy five years later, on March 26, 2016. The March 2016 colonoscopy could not be completed because a cancerous growth had formed in Mr. King's colon. He died a few months later. On April 16, 2018, the Plaintiffs filed this wrongful death action, claiming that Dr. Ramani was negligent in advising Mr. King that he did not need a follow-up colonoscopy until as long as five years after the one done in April 2011. Given Mr. King's medical history, they allege, the standard of care required Dr. Ramani to advise Mr. King to return for his next colonoscopy in three years. The negligent advice, they further allege, resulted in a delay in the diagnosis and treatment of colon cancer which ultimately led to Mr. King's death.

1

The Defendants filed a motion for summary judgment in which they argued that the Plaintiffs' action was barred by the statute of limitations. 18 *Del. C.* § 6856 requires that a medical negligence action be brought within two years of the "date upon which such injury, [i.e., personal injury] occurred," or, if the injury is unknown to the injured person and cannot be discovered through the exercise of reasonable diligence within two years of the date of injury, within three years of the date of injury. They argued that under this Court's precedents, "the date upon which the injury occurred, for purposes of the [medical negligence statute of limitations, is] the date of the alleged wrongful act or omission," i.e. April 26, 2011.[2] The Plaintiffs made a number of arguments in opposition to the motion, including the argument that the Superior Court should apply the continuous negligent medical treatment doctrine and find that the statute did not begin to run until Dr. Ramani attempted to perform the colonoscopy on March 26, 2016.

The Superior Court found that the continuous negligent medical treatment doctrine applies to the facts of this case and held that under that doctrine the statute did not begin to run until March 26, 2016.[3] Before filing suit, the Plaintiffs sent a Notice of Intent to investigate medical negligence to the Defendants pursuant to 18 *Del. C.* § 6856(4), which had the effect of tolling the statute for 90 days, which meant

---

[2] App. to Appellants' Opening Br. at 74 [hereinafter A__] (quoting *Dunn v. St. Francis Hospital, Inc.*, 401 A.2d 77, 80 (Del. 1979)).
[3] *See Anderson v. GI Assoc. of Del., P.A.*, 2020 WL 2070342, at *6 (Del. Super. Apr. 28, 2020).

that if the statute ran from March 26, 2016, the Plaintiffs' complaint was timely filed.

We accepted this appeal to review the Superior Court's ruling that the continuous negligent medical treatment doctrine applies to the facts of this case. For the reasons discussed below, we find that the continuous negligent medical treatment doctrine does not apply. We also address the Defendants' contention that the injury occurred on the date of Dr. Ramani's alleged negligence on April 26, 2011.

## II.    FACTS AND PROCEDURAL HISTORY

Dr. Ramani, a gastroenterologist, performed a number of colonoscopies on Mr. King, who was at high risk of developing colon cancer. A colonoscopy was performed on April 4, 2011, which showed benign tumors in Mr. King's colon. At a follow-up visit on April 26, 2011, Dr. Ramani recommended that Mr. King should return for another colonoscopy in three to five years.

Steven F. Moss, M.D. is the Plaintiffs' expert witness. Dr. Moss opined that, after the 2011 colonoscopy, the standard of care required a repeat colonoscopy within three years.[4] Further, Dr. Moss opined that had Mr. King's cancer been diagnosed in 2014, it would have been treatable, and Mr. King would have had a much better prognosis.[5] Dr. Moss also opined that apart from the alleged negligent recommendation that Mr. King return for another colonoscopy in three to five years

---

[4] A163 (Dr. Moss Dep. Tr. at 71:3-8).
[5] A159-60, 163-64 (Dr. Moss Dep. Tr. at 67:15-68:5, 71:22-72:13).

instead of three years, Dr. Ramani did not otherwise breach the standard of care.[6]

In their motion for summary judgment, the Defendants argued that under 18 *Del. C.* § 6856, the statute of limitations expired at the latest on April 26, 2014 because, they argued, under this Court's precedents, the date of injury is the same as the date of the negligent act. In addition, they argued that this was a single act of negligence and that the continuous negligent medical treatment doctrine does not apply.

In their opposition to the motion, the Plaintiffs made several arguments in the alternative. They argued that the Superior Court should "[a]dopt a limited discovery rule where there is no injury in the two (or three years) following the alleged negligence;"[7] that the Court should extend the continuous negligent medical treatment doctrine to the last act related to the original negligence, whether or not such act was negligent; that the Plaintiffs' claims are not barred by the two year limitations period contained in § 6856 because such an application violates the Delaware Constitution; that the Plaintiffs' claims are not barred because such an application of § 6856 unconstitutionally treats similarly situated claimants differently; and that the Plaintiffs' claims are not barred because the two year period of limitations in § 6856 violates due process.

---

[6] A117 (Dr. Moss Dep. Tr. at 25:17-20).
[7] A318.

4

In its opinion denying the Defendants' motion, the Superior Court reasoned that "[f]or purposes of Section 6856, the date upon which the 'injury' occurred depends on whether the case involves a single act of negligence or a continuous course of negligent medical treatment."[8]  In discussing the statute of limitations and single acts of negligence, the court made the following observation:

> With respect to single acts of negligence, the decisional law is well-settled.  The Delaware Supreme Court has consistently held that where there is a single act of medical negligence, typically a misdiagnosis or a failure to diagnose, the statute of limitations for medical negligence begins to run on the date that the single act of negligence occurred.[9]

The court drew this conclusion from our decisions in *Dunn v. St. Francis Hospital, Inc.*,[10] *Meekins v. Barnes*,[11] and *Dambro v. Meyer*.[12]

The court found that the cases involving a single act of negligence were not applicable to the facts of this case:

> Defendants' reliance on the decisional law involving single acts of negligence is misplaced for several reasons. First, the case before the Court does not involve a single act of negligence but instead involves a continuous course of negligent medical treatment, which is a separate and distinct cause of action subject to a different section 6856 analysis.   Second the decisional law involving single acts

---

[8] *Anderson*, 2020 WL 2070342, at *2.
[9] *Id*.
[10] 401 A.2d 77 (Del. 1979).
[11] 745 A.2d 893 (Del. 2000) (en banc).
[12] 974 A.2d 121 (Del. 2009).

of negligence is not applicable where, as here, the injury and the negligence did not take place on the same date.[13]

The court elaborated on its finding that the alleged negligence and the injury did not occur on the same date:

> Unlike the injuries in the cases involving single acts of negligence, Mr. King's injury did not arise at the time of the alleged breach of the standard of care. There is no record evidence that Mr. King had cancer which was missed or misdiagnosed by Dr. Ramani during the April 4, 2011 colonoscopy.
>
> . . . .
>
> . . . Here, the date of negligence and the date of injury are two separate dates. Accordingly, the decisional law involving single acts of negligence does not apply to Plaintiffs' claims. Instead, application of Section 6856 to Plaintiffs' claims is governed by the continuous negligent medical treatment doctrine.[14]

The court then proceeded to analyze the continuous negligent medical treatment doctrine, found that it applied to the facts of this case, and concluded that the statute of limitations began to run on the date of Dr. Ramani's last treatment of Mr. King, when his cancer was discovered on March 26, 2016.

On appeal, the Defendants make two claims. First, they claim that the continuous negligent medical treatment doctrine does not apply to the facts of this case. Second, they claim that "the term 'injury' as it appears in 18 *Del. C.* § 6856

---

[13] *Anderson*, 2020 WL 2070342, at *3 (internal citation omitted).
[14] *Id*. at *3, 4.

6

is defined as when the alleged act of negligence took place, not some other vague and undefined date of injury."[15]

The Plaintiffs assert five claims. First, Plaintiffs claim that the Superior Court's ruling that the continuous negligent medical treatment doctrine applies and that the statute runs from March 26, 2016 is correct and should be affirmed. Second, they claim that "'injury' under 18 *Del. C.* § 6856, however defined, is irrelevant to the central issue of whether the Superior Court correctly applied the continuous negligent medical treatment doctrine."[16] Next, they claim that if this Court does not affirm on the basis of the Superior Court's ruling, it should extend the continuous negligent medical treatment doctrine to encompass the facts presented here. Next, they claim this Court should "adopt a limited discovery rule in cancer cases" and overrule our precedents inconsistent with such a rule.[17] Finally, they repeat the constitutional arguments they made in the Superior Court.

### III.    STANDARD OF REVIEW

This Court reviews a denial of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute

---

[15] Appellants' Opening Br. at 19.
[16] Appellees' Answering Br. at 13.
[17] *Id*. at 20.

and that the moving party is entitled to judgment as a matter of law."[18]

"Questions of law, including the interpretation of statutes, are also reviewed *de novo*."[19]

## IV.   DISCUSSION

Under 18 *Del. C.* § 6856, "No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred."   However, if the personal injury "was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person" during the two year period, "such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred."[20]

## A.

This Court first recognized the continuous negligent medical treatment doctrine in *Ewing v. Beck*.[21]   The Court explained that:

> When there is a continuum of negligent medical care related to a *single condition* occasioned by negligence, the plaintiff has but one cause of action—for continuing negligent medical treatment.   If any act of medical negligence within that continuum falls within the period

---

[18] *Homeland Ins. Co. of N.Y. v. CorVel Corp.*, 197 A.3d 1042, 1046 (Del. 2018) (en banc).
[19] *City of Wilm. v. Nationwide Ins. Co.*, 154 A.3d 1124, 1127 (Del. 2017).
[20] 18 *Del. C.* § 6856(1).
[21] 520 A.2d 653 (Del. 1987).

during which suit may be brought, the plaintiff is not obliged to split the cause of action but may bring suit for the consequences of the entire course of conduct.[22]

In determining whether there is a continuum of negligent medical care related to a single condition occasioned by negligence, the facts alleged by the plaintiff "must be examined to see if the negligent treatment, as alleged, can be segmented or is, in fact, so inexorably intertwined that there is but one continuing wrong."[23] If supported by the facts in the record, "the statute of limitations runs from the date of the last act in the negligent continuum."[24] The doctrine requires that there be a continuum of negligent medical care, that is, negligent care which is continuous and uninterrupted for some period of time. Where that is the case, the plaintiff is not required to split his or her cause of action between the parts of the continuum, but may bring a single cause of action for the entire continuum of negligent medical care if any part of it occurs within the time required by the statute of limitations.

The continuous negligent medical treatment doctrine can be contrasted with the continuing treatment doctrine, under which the statute of limitations begins "to run on the last day the plaintiff received treatment from the defendant health care provider for the *same or a related condition* which is the subject matter of the

---

[22] *Id*. at 662 (citing *Tamminen v. Aetna Cas. & Sur. Co.*, 327 N.W.2d 55, 64 (Wis. 1982) (emphasis in original)).
[23] *Id*. (citing *Streitz v. LeRoy*, C.A. No. 84C-OC-127 (Del. Super. Ct. Apr. 28, 1986)).
[24] *Id*. (citing *Oakes v. Gilday*, 351 A.2d 85 (Del. Super. Ct. 1985)).

9

Complaint, whether or not negligence continued throughout the entire course of treatment."[25]    Under the continuing treatment doctrine, the statute of limitations is measured from the time that treatment of a condition is completed, and an action filed within the time allowed from that date is considered timely even if no negligence occurred during the limitations period.   "The difference between the two doctrines, for statute of limitations purposes, is that under the doctrine of continuous negligent medical treatment, the focus is limited to the last act in the negligent continuum, not the last act in the treatment."[26]    The continuing treatment doctrine has been recognized in many jurisdictions, but it has been rejected in this state as being inconsistent with § 6856.[27]

If the continuing treatment doctrine were the law in this state, it could be argued that the colonoscopy that Dr. Ramani performed, or attempted to perform, on March 26, 2016 was the last act in a continuous course of treatment and the statute of limitations runs from that date.   The continuous negligent medical treatment doctrine which this state has adopted, however, requires more.   Under that doctrine, the statute runs from the last act in the continuum of negligent treatment.   Here, there is no allegation that any negligence was associated with the colonoscopy Dr. Ramani attempted to perform on March 26, 2016 or that he was negligent in any

---

[25] *Id*. at 659 (emphasis in original).
[26] *Benge v. Davis*, 553 A.2d 1180, 1183 (Del. 1989) (citing *Ewing*, 520 A.2d at 663, n.11).
[27] *See Ewing*, 520 A.2d at 659-61.

10

way on that occasion. The March 26, 2016 procedure, therefore, is not an act in a continuum of negligent medical treatment. Since the treatment on March 26, 2016 does not fall within the alleged continuum of negligent medical treatment, the Plaintiffs' claim collapses into a single act of alleged medical negligence occurring on April 26, 2011 and the continuous negligent medical treatment doctrine is of no avail to them. The Superior Court erred by finding that the continuing negligent treatment doctrine applies to the facts of this case.

**B.**

We now turn to the Defendants' argument that in a case involving a single act of negligence, the date of injury is defined as being the same as the date of negligence. As discussed above, the Superior Court stated in its opinion that this Court's decisional law is well settled that where there is a single act of alleged medical negligence, the statute of limitations runs from the date of the alleged negligence. Appellants' counsel has taken the same position in this Court, arguing that under this Court's precedents, the statute of limitations runs from Dr. Ramani's act of alleged negligence on April 26, 2011. If that is so, the statute has clearly run because the action was filed more than three years after Dr. Ramani's alleged negligence. For the reasons that follow, however, we do not believe that our finding that the continuous negligent medical treatment doctrine does not apply resolves the statute of limitations issue.

11

The Superior Court's decision to find that the continuous negligent medical treatment doctrine applies in this case was influenced, it appears to us, at least in part by that court's finding that "[u]nlike the injuries in the cases involving single acts of negligence, Mr. King's injury did not arise at the time of the alleged breach of the standard of care."[28]   The Superior Court's finding that Mr. King's injury did not arise at the time of the alleged negligent advice appears to be supported by the record.   The April 2011 colonoscopy, it appears, revealed only benign tumors.

We will discuss the cases which caused the Superior Court and Appellants' counsel to believe that it is well-settled that where a single act of negligence is involved, the statute of limitations must run from the date of the alleged negligent act.

The first such case is *Dunn v. St. Francis Hospital, Inc.*[29]   In that case the doctor performed a back operation on the plaintiff, Fred Dunn, on July 13, 1970. Dunn's symptoms necessitating the operation were on the left side of his back. However, the doctor entered Dunn's back on the right side.   In April of 1975 Dunn started experiencing pain in his right leg.   Later, in January of 1977, Dunn learned that his leg pain may have been caused by negligence during the 1970 back operation.   On March 10, 1977, Dunn sued the doctor and the hospital where the

---

[28] *Anderson*, 2020 WL 2070342, at *3.
[29] 401 A.2d 77 (Del. 1979).

12

operation took place. The defendants raised the statute of limitations as a defense. The Court stated that the case presented "the question of whether the statute of limitations commenced to run when the negligent act or omission was committed or when the harm first manifested itself to the patient."[30]

Before considering the Court's analysis in *Dunn*, it is helpful to consider the background of the law in this area at the time *Dunn* was decided. For this, we must discuss the well-known case of *Layton v. Allen*, which established the time-of-discovery rule in this jurisdiction.[31] *Layton* was a medical negligence case. In 1958, Dr. Layton operated on Anna Pearl Allen's abdomen to correct a hernia. He left a medical instrument several inches long in Allen's body when the operation was concluded. It was not until seven years later, in 1965, that Allen began to experience pain in her abdomen. When she consulted with a physician about her pain, x-rays revealed the instrument which had been left in her abdomen. This led to an emergency operation for removal of the instrument. Three additional surgeries were required to repair the damage caused by the instrument and the passage of time.

At that time there was no specific statute of limitations for medical negligence actions. They were governed by a forerunner version of the general, two year

---

[30] *Id*. at 78.
[31] 246 A.2d 794 (Del. 1968).

13

statute of limitations for actions based on personal injuries now found at 10 *Del. C.* § 8107. The statute, then at 10 *Del. C.* § 8118, provided that "No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained." The Court in *Layton* held that:

> [W]hen an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is 'sustained' under § 8118 when the harmful effect first manifests itself and becomes physically ascertainable.[32]

In other words, the Court determined in that case that the date of Allen's injury was the date upon which the injury manifested itself in 1965, not the date of the operation.

In *Dunn*, the plaintiffs made an argument which was consistent with *Layton.* They argued that "there was no damage until April 1975 when pain was experienced and until that date the 'injury' had not 'occurred.'"[33]

Dunn's case was governed by 18 *Del. C.* § 6856, which became effective on April 26, 1976. Applying that statute, the Court rejected Dunn's argument, stating:

> This limited extension[, from two to three years,] of the [two-year] period, in our judgment, is intended to give consideration to the problem of an injury which is not

---

[32] *Id.* at 798.
[33] *Dunn*, 401 A.2d at 80.

14

physically ascertainable. Such extension further appears directly intended to limit the open-ended aspect of the prior law which provided that in the case of an "inherently unknowable" injury that the applicable period began to run when the injured person became aware of his injury. . . It simply appears on the face of the statute that s 6856(1) is an attempt to codify the "inherently unknowable" injury rule of the *Layton* case and limit it to three years.[34]

The Court then discussed the report to the Governor of the Delaware Medical Malpractice Commission. The Court stated that the report of the Commission, which drafted § 6856, "clearly indicates that the phrase 'injury occurred' means the time at which the wrongful act or omission occurred. The report, referring to § 6856, reads in part: '[t]he overall effect will be to eliminate the uncertainty created by the present open-ended period of limitations.'"[35] After discussing the report of the Commission, the Court concluded that "[t]hus, through examination of legislative history, there is no doubt that the phrase 'injury occurred' refers to the date when the wrongful act or omission occurred."[36] The Court thus rejected Dunn's argument based on *Layton* and ruled that the statute of limitations ran "from the time when the wrongful act occurred and not from the time when that act was discovered."[37] In terms of the issue as framed, the Court found that the injury occurred at the time of the negligently performed operation, as opposed to the date

---

[34] *Id*. at 79 (citations omitted).
[35] *Id*. (quoting Report of the Delaware Medical Malpractice Commission, pp. 3-4, Feb. 26, 1976).
[36] *Id*. at 80.
[37] *Id*. at 81.

"when the harm first manifested itself to the patient."[38]

     *Meekins* and *Dambro* were both cases involving a doctor's failure to diagnose breast cancer after performing a mammogram. In both cases, the Court followed *Dunn* and found that the injury occurred when the wrongful act or omission occurred. In *Meekins v. Barnes*, the plaintiff-patient, Mary Meekins, had several mammograms performed at Women's Imaging Center of Delaware (WIC) between 1990 and December 1994.[39] After each mammogram a radiologist, Dr. Susan Barnes, interpreted the films, discussed her interpretation of the films with Meekins, and advised Meekins to return for another mammogram in one year. Dr. Barnes discussed the December 1994 mammogram with Meekins on December 21, 1994. In October of 1995, Meekins felt a lump in her breast. She was examined by her family physician in late November, who then referred her to Dr. Abdel-Misish. On December 1, 1995, Dr. Abdel-Misish confirmed the existence of two masses in Meekins' left breast. Dr. Abdel-Misish then performed a modified radical mastectomy on Meekins' left breast on December 26, 1995. On April 16, 1997, Meekins filed suit against Dr. Barnes, WIC, and Dr. Barnes' employer. She argued that "in December 1994, the radiologists were medically negligent by failing to diagnose [her] cancer. [She] argue[d] that the statute of limitations did not begin

---

[38] *Id*. at 78.
[39] 745 A.2d 893, 895 (Del. 2000) (en banc).

to run until she was damaged or 'injured' when the radiologists failed to call her back for another mammogram six months later in June of 1995."[40]  June 1995 is when Meekins' expert opined that Dr. Barnes should have recalled her for another mammography after the December 1994 mammogram.  The radiologists agreed that it could be assumed that negligence occurred in December 1994.  The Court rejected Ms. Meekins' argument that the statute of limitations did not begin to run until six months after the December 1994 mammogram:

> An act of omission can be a valid basis for a plaintiff's medical malpractice claim, if that act of omission occurs "within the context of an affirmative happening or event." The only affirmative happening or event of the radiologists occurred at the time of the misdiagnosis in December 1994.
>
> It is artificial to predicate the commencement of the statute of limitations period, as Meekins' argues, on the theoretical six-month period (i.e., June 1995) from the [sic] December 1994. . . . There was no cause of action that actually arose in June 1995 because no affirmative happening or event of medical negligence occurred at that time.[41]

The Court, applying *Dunn*, ruled that the statute began running when Dr. Barnes negligently failed to diagnose Ms. Meekins' cancer in December 1994.  The Court stated that "[i]n theory, Meekins could have brought an action at that time had Meekins known of the alleged negligent diagnosis, although her damages would be

---

[40] *Id*. at 897.
[41] *Id*. at 898 (internal citation omitted).

17

difficult to quantify."[42]

In *Dambro v. Meyer*, the plaintiff, Catherine C. Meyer, had seven mammograms performed by the defendants between 1997 and 2006.[43] The first five exams were interpreted as normal and negative for cancer. A March 8, 2005 mammogram was interpreted the same. A mammogram performed May 4, 2006 was interpreted as highly suggestive of malignancy. Meyer learned that she had a large lesion in her breast and, following a biopsy on May 18, 2006, learned that it was positive for cancer. On October 24, 2007, Meyer filed suit. She claimed "that the breast cancer was present and diagnosable during her March 8, 2005, mammogram and that defendants were negligent when they failed to diagnose the existence of cancer during that exam."[44] The Defendants argued that the statute of limitations began to run on the date of the negligent act, March 8, 2005, when the misdiagnosis occurred. Meyer argued that the statute of limitations did not begin to run until her cancer metastasized on November 1, 2005. Relying on *Meekins*, this Court held that Meyer's argument failed because her injury occurred on the date of the allegedly negligent act, i.e., the defendants' failure to diagnose the cancer on March 8, 2005. This Court explained that under *Dunn* and *Meekins*, "the phrase 'injury occurred' in section 6856 . . . 'refers to the date when the wrongful act or

---

[42] *Id*. at 897.
[43] 974 A.2d 121, 124 (Del. 2009).
[44] *Id*. at 125.

18

omission occurred.'"[45]  The injury, the Court further explained, "was the delay in treatment.  That injury occurred on the date that the cancer could have been diagnosed but was not."[46]

## C.

We can understand how one could interpret statements made by this Court in *Dunn*, *Meekins*, and *Dambro* as establishing an absolute rule that the date of the alleged negligent act or omission is the date of injury as a matter of law.  They contain statements which suggest that.  Those statements stem from the Court's analysis of the legislative history of § 6856 in *Dunn* and the Court's characterization of the report of the Delaware Medical Malpractice Commission as "clearly indicat[ing] that the phrase 'injury occurred' means the time at which the wrongful act or omission occurred."[47]  In *Dunn*, this Court was recognizing that newly enacted § 6856 and the Commission's report in connection therewith were overruling *Layton's* rule, as applied to medical negligence cases, that the date of the injury may be a date, perhaps years later, when the injury manifested itself, even though the injury was actually sustained on the date of the negligence.

The rulings in *Dunn*, *Meekins*, and *Dambro* that the injury coincided with the negligence were all grounded in and supported by the evidence in those cases.

---

[45] *Id*. at 132 (quoting *Meekins*, 745 A.2d at 897).
[46] *Id*.
[47] *Dunn*, 401 A.2d at 79.

19

Under the unique facts of this case, however, the trial court has made a factual finding that "Mr. King's injury did not arise at the time of the alleged breach of the standard of care."[48] That finding appears to be supported by the evidence. The April 2011 colonoscopy revealed only benign tumors. Under these facts, it appears that the injury occurred later, sometime after Dr. Ramani gave his allegedly negligent advice. This is an unusual case, therefore, where the date of the negligent act and the occurrence of the injury do not coincide.

## V. CONCLUSION

We reverse the Superior Court's ruling that the statute of limitations began running on March 26, 2016 under the continuous negligent medical treatment doctrine. We reject the Plaintiffs' contention that the continuous negligent medical treatment doctrine should be extended to encompass the facts of this case. We reject the Plaintiffs' contention that we should adopt a limited time-of-discovery rule in cancer cases. We do not address the Plaintiffs' constitutional arguments. They are not ripe unless and until it is determined that this action is, in fact, barred by the statute of limitations. We reject the Defendants' contention that the date of negligence and the date of injury are the same on the facts of this case. The text of § 6856 does not mandate that the date of negligence and the occurrence of injury

---

[48] *Anderson*, 2020 WL 2070342, at *3.

20

must be deemed to coincide, even where the facts of the case do not support such a finding.

On remand, the Defendants are free to pursue their statute of limitations defense. If they do, the Superior Court should make a factual determination as to when the date of injury occurred and apply § 6856 to that finding accordingly. If the Superior Court determines that the action is barred by § 6856, the Plaintiffs may present their constitutional arguments there.

The case is remanded to the Superior Court for further proceedings consistent with this opinion. Jurisdiction is not retained.

21