IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RYAN AND MARISA ALTENBAUGH, | § § § | No. 120, 2021 |
| Plaintiffs Below, Appellants, | § § § § | Court Below—Superior Court of the State of Delaware |
| v. | § § § | C.A. No. N19C-11-046 |
| BENCHMARK BUILDERS INC. and DELAWARE ROOFING & SIDING COMPANY L.L.C., | § § § § | |
| Defendants Below, Appellees. | § § § | |

Submitted: November 10, 2021
Decided: January 20, 2022

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## **O R D E R**

This 20th day of January 2022, upon consideration of the parties' briefs and the record of the case, it appears that:

(1) The Plaintiffs-Appellants, Ryan and Marisa Altenbaugh (the "Altenbaughs"), appeal from the Superior Court's grant of summary judgment in favor of the Defendants-Appellees, Benchmark Builders Inc. ("Benchmark") and Delaware Roofing & Siding Company L.L.C ("DRSC"). The Altenbaughs brought this action against Benchmark and DRSC alleging that the Appellees were liable for damages caused by negligence in the construction of the Altenbaughs' home in

Newark, Delaware. Benchmark and DRSC moved for summary judgment, arguing that the Altenbaughs' claim was barred by the applicable three year statute of limitations because Ryan Altenbaugh was on notice of the alleged negligence since at least 2011. The Altenbaughs argued that while Ryan was aware of limited water leaks in the home well before bringing this suit, he was not aware of the alleged significant construction defects until 2019. They argued that the statute of limitations was tolled by the time-of-discovery rule until 2019. The Superior Court rejected the Altenbaughs' time-of-discovery argument and found that the cause of action was time barred because there were undisputed facts showing as a matter of law that Ryan was on notice of alleged defects since at least 2011.

(2) On appeal, the Altenbaughs argue that there are material issues of fact regarding their level of knowledge of construction defects prior to 2019, and it should be up to a jury to determine when they were put on notice of the Appellees' negligence. We find no merit to the Altenbaughs' claims and affirm the judgment of the Superior Court.

(3) On or about March 31, 2008, Ryan Altenbaugh and his then-wife, Amee Altenbaugh, purchased a home in the Academy Hills development of Newark Delaware from Benchmark. On March 2, 2011, Ryan became the sole owner of the Property. On June 14, 2017, the Property was retitled to include Marisa Altenbaugh, Ryan's current wife, as an owner along with Ryan.

2

(4)     The first mention of a leak appears to be in a letter that Ryan sent to Benchmark in January of 2009, in which he reported that "[t]he set of 3 windows in the kitchen are not properly sealed from wind/rain causing at least 2 places where water has leaked from the top of the window into the kitchen."[1]   In March of that year, Ryan and Amee prepared a one-year list of warranty items in which they reported that "the middle of the kitchen windows leaks when it rains."[2]   More significantly, in January 2011, Ryan sent a letter (the "2011 Letter") to Benchmark notifying it of an issue in the property's basement.  In the letter, Ryan described the scope of the damage:

> Just recently, I discovered what appears to be a construction defect in my house . . . In the basement, on the wall facing east, near the walk outdoor, there is significant water on the inside of the walls.  This includes the plywood boards and the supporting wall frame. The area is about 15 feet horizontal, and 4 feet vertical along this entire section of wall.  It appears the walls are soaked, and there are stains along the supporting 2 x 4 wall supports from continued exposure to water.  I just noticed this, as the fiber glass insulation was covering most of the issue.  This insulation is also partially "sticking" to the wall due to the water.
>
> The problem will need to be corrected as soon as possible, as further water damage would eventually compromise the structure of this portion of the wall.  I am requesting that Benchmark Builders take a look at the issue and determine

---

[1] App. to Appellant's Opening Br. at A112 [hereinafter "A_"].
[2] A171.

if some correction might be covered under an existing warranty.[3]

After receiving this letter, Benchmark sent a representative to the property who identified one section of the weep screed[4] as the source of the leak. Benchmark's representative told Ryan that the issue was limited to one small area of the basement wall and that he had repaired the problem. The Altenbaughs did not report any further damage until 2019.

(5) In August 2019, a contractor repairing interior drywall in the Altenbaughs' bathroom alerted the couple to rotting wood behind the drywall. Soon after this discovery, the Altenbaughs contracted with Green Valley Group to conduct a Building Moisture Survey, which uncovered alleged systemic and catastrophic water intrusion. The bulk of the defects related to a failure to install adequate flashing around penetrations through the stucco exterior.

(6) The Altenbaughs filed their complaint against Benchmark and DRSC on November 6, 2019, seeking recovery for the alleged damage to their property.[5] Benchmark filed a Motion to Dismiss or in the Alternative for Summary Judgment, contending that the action was time barred under 10 *Del. C.* § 8106. The Superior Court denied the Motion to Dismiss and allowed the parties to proceed with

---

[3] A022.

[4] A weep screed is a special piece of metal flashing that serves as a vent so that moisture can escape a stucco wall finish just above the foundation.

[5] DRSC was apparently a subcontractor in the construction of the house.

discovery. On March 26, 2021, after discovery, the Superior Court granted the Appellees' Motion for Summary Judgment, finding that there were undisputed facts, in particular the 2011 Letter, that established that Ryan possessed knowledge of injury to the home since at least 2011.[6]

(7)     This Court reviews a grant of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[7]

(8)     Pursuant to 10 *Del. C.* § 8106(a), "no action to recover damages by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action."[8] Such statutes are commonly known as "accrual" statutes, and causes of action under these statutes are deemed to have accrued, and time begins to run, at the time the tort is committed.[9] Consequently, under the general rule in Delaware, a plaintiff's cause of action for a negligent construction claim accrues at the time of construction.[10]

(9)     However, in *Layton v. Allen*,[11] this Court explained that the "time-of-

---

[6] DRSC joined in Benchmark's Motion for Summary Judgment.
[7] *Homeland Ins. Co. of N.Y. v. CorVel Corp.*, 197 A.3d 1042, 1046 (Del. 2018) (en banc).
[8] 10 *Del. C.* § 8106(a).
[9] *Isaacson, Stolper & Co. v. Artisans' Sav. Bank*, 330 A.2d 130, 132 (1974).
[10] *Id.*
[11] 246 A.2d 794 (Del. 1968).

discovery" rule could toll the running of such statutes. The time-of-discovery rule was traditionally applied in medical malpractice cases but has since been expanded to other actions, including causes of action based on alleged negligent construction such as the one involved here. Under the time-of-discovery rule, a statute may be tolled if the injury is inherently unknowable and the plaintiff is blamelessly ignorant of the cause of action, or if the defendant fraudulently conceals the cause of action.[12] If the injury is inherently unknowable, the statutory period will be suspended until the plaintiff possesses what is referred to as "inquiry notice" of the claim.[13] A party is deemed to have inquiry notice "upon the discovery of facts constituting a basis for the cause of action, or [where the party] knows facts sufficient to put a person of ordinary intelligence and prudence on inquiry, which, if pursued, would lead to the discovery of such facts."[14] The court should consider whether there were red flags that would have left a prudent person of ordinary intelligence to inquire further.[15]

(10) The Appellees do not take issue with the contention that the alleged construction defects were inherently unknowable at the time Ryan and Amee bought the house. The dispute concerns when Ryan was put on inquiry notice of the alleged defects. Accordingly, the issue on appeal is whether there are undisputed facts that support a finding that Ryan was put on inquiry notice of the alleged negligence more

---

[12] *Id.* at 797.
[13] *Wal-Mart Stores, Inc. v. AIF Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).
[14] *Id.*
[15] *Coleman v. Pricewaterhousecoopers, LLC,* 854 A.2d 838, 842 (Del. 2004).

than three years prior to bringing this lawsuit.

(11) The Altenbaughs argue that the facts are insufficient to show as a matter of law that Ryan was put on inquiry notice of the construction defects in the home prior to the Building Moisture Survey in 2019. The Appellees argue, and the Superior Court agreed, that the 2011 Letter shows that Ryan was on inquiry notice of a construction defect causing significant water on the inside of the walls in the home at that time. This fact, the Appellees argue, is undisputed. The Altenbaughs contend that there is a difference between knowledge of "limited" leaks in their home and knowledge of a construction defect. The Altenbaughs further argue that because they do not have specialized knowledge regarding home construction, they reasonably relied on Benchmark's evaluation of the basement leak in 2011 and, therefore, Ryan was not put on notice at that time.

(12) To support their argument, the Altenbaughs point to several Superior Court cases where the court refused to decide a time-of-discovery rule issue at the summary judgment stage because the plaintiffs' knowledge of construction defects was disputed.[16] However, we find the cases cited by the plaintiff to be

---

[16] *See, e.g.*, *Washington House Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079 (Del. Super. Aug. 8, 2017); *Guerrieri v. Cajun Cove Condo. Counsel*, 2007 WL 1520039 (Del. Super. Apr. 25, 2007); *S&R Assocs., L.P. v. Shell Oil Co.,* 725 A.2d 431 (Del. Super. 1998); *Affordable Homes Enters., Inc. v. Nelson*, 1994 WL 315227 (Del. Super. May 25, 1994); *Council of Unit Owners of Sea Colony E., Phase III Condo., on behalf of Ass'n of Owners v. Carl M. Freeman Assocs., Inc.*, 1988 WL 90569 (Del. Super. Aug. 16, 1988); *Queen Anne Pier Condo. Council v. Raley*, 1988 WL 7618 (Del. Super. Jan. 26, 1988).

7

distinguishable and, therefore, unpersuasive. None of the cases discussed in the Appellants' brief include communications from the homeowner explicitly stating that issues with the home were likely caused by a "construction defect."

(13) We agree with the Appellees that Ryan was on inquiry notice of water on the inside of the walls of his home in 2011, when he discovered what he described as an apparent construction defect, covering a fifteen by four-foot area of the wall in the basement. At that point, the existence of a water seepage problem was no longer inherently unknowable. The discovery of soaked walls at that time was sufficient to put Ryan on notice of a significant water problem, which could have been pursued at that time and that would have led to the discovery of the construction defects. Representations made by an agent of the party responsible for the defects do not render the defects inherently unknowable and cannot simply be accepted at face value as a reasonable basis for not further investigating and discovering the defects in 2011.

NOW, THEREFORE, IT IS THE ORDER of the Court that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

8