Michael BROWN and Lindsay Brown, as parents and natural guardians of Philip Brown; and Michael Brown and Lindsay Brown, Individually; Graham Copland and Susan Copland, as parents and natural guardians of Gary Copland; and Graham Copland and Susan Copland, Individually; Jonathan Johnstone and Jacqueline Johnstone, as parents and natural guard-

ians of Jarad Johnstone, and Jonathan and Jacqueline Johnstone, Individually; Juveria Memon, as parent and natural guardian of Khalid Memon, and Juveria Memon, Individually, Plaintiffs Below, Appellants,

v.

### E.I. DUPONT DE NEMOURS AND COMPANY, INC., Defendant Below, Appellee.

Mark Ison and Karen Ison, as parents and natural guardians of Blake Ison; and Mark Ison and Karen Ison, Individually; Andrea Reilly, as parent and natural guardian of Jesse Hanham, and Andrea Reilly, Individually, Plaintiffs Below, Appellants,

v.

E.I. duPont de Nemours and Company, Inc., Defendant Below, Appellee.

Nos. 298, 2002, 299, 2002.

Supreme Court of Delaware.

Submitted: Jan. 22, 2003.
Decided: April 15, 2003.

Thomas C. Crumplar (argued), Jacobs & Crumplar, P.A., Wilmington; James L Ferraro, of Ferraro & Associates, P.A., Miami, FL, of counsel, for Appellants.

James W. Semple, Morris, James, Hitchens & Williams, LLP, Wilmington; Michael L. Martinez (argued), William L. Anderson, Barry M. Parsons and Katherine J. Nesbitt, of Crowell & Moring, LLP, Washington, D.C., of counsel, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal, we hold that the statute of limitations for an alleged injury resulting from toxic exposure did not begin to run until the plaintiffs were on notice that the harmful effects of the toxic exposure were possibly caused by wrongful conduct. The infant victims in this case were born with eye conditions that their physicians originally believed were either genetic defects or natural occurrences. Years later, however, a medical expert linked the birth defects to prenatal exposure to a chemical produced by the defendant. It was not until then that the plaintiffs were on notice of a possible tortious act.

The applicable statute of limitations begins to run when injuries are "sustained." We hold that the commencement of the limitations period here is deferred until the plaintiffs were on notice that the birth defects were potentially actionable injuries because legal injuries were not sustained until that time.

### Facts

Eight families brought products liability claims against E.I. duPont de Nemours and Company, Inc. ("DuPont") alleging that the exposure of pregnant mothers to Benlate, a DuPont product, caused birth defects in their children.[1] When the plaintiff children in this case were born, physicians diagnosed the defects as either anophthalmia or severe microphthalmia. The children suffering from anophthalmia were born without eyes. The children suffering from microphthalmia were born with abnormally small eyes.[2]

---

1. The children and the parents of each family are collectively referred to as "plaintiffs" in this opinion. The Superior Court initially dismissed plaintiffs' cause of action on the ground of *forum non conveniens*. This Court reversed that decision and remanded the case for further proceedings. *Ison v. E.I. duPont de Nemours and Co.*, 729 A.2d 832 (Del.1999).

The issue currently before us arises on remand.

2. Phillip Brown was born on February 15, 1984. Khalid Memon was born on June 24, 1985. Jesse Hanham was born on November 10, 1990. Gary Copland was born on June 6, 1992. Jared Johnstone was born on Septem-

Shortly after the children were born, the parents sought a medical explanation for their children's conditions. The doctors informed the parents that the cause of the birth defects was unknown. At the time, scholarship in the area suggested that anophthalmia and microphthalmia were either genetic defects or were caused by intrauterine infections. None of the doctors could find the condition in the parents' family medical histories, however. The parents assumed the abnormalities were an act of nature.

In the Spring of 1996, an expert linked the children's condition to their mothers' prenatal exposure to benomyl, an active ingredient in Benlate, which is a fungicide produced by DuPont. This product is primarily used for commercial agricultural purposes. The plaintiffs contend that the mothers were exposed to Benlate during the periods in which they were pregnant by handling seedlings and flower bulbs either soaked or dusted with Benlate while the mothers were working in a nursery or tending to their home gardens.

### Proceedings in the Superior Court

Two families brought a product liability action against DuPont on June 24, 1997. Four other families brought a similar action on July 15, 1997. The applicable statute of limitations period is two years from the date the injuries were sustained.[3] The plaintiffs contend that the complaints were

filed less than two years after the families were on notice of the possible link between Benlate and the eye abnormalities, even though they were filed more than two years after each of the children was born.[4] The trial judge granted a motion for summary judgment in favor of DuPont and dismissed the actions of six of the Plaintiff families as time-barred by the statute of limitations.[5]

### Issue on Appeal

Plaintiffs argue that the trial judge erred by dismissing their cause of action as time-barred because the plaintiffs filed suit more than two years after the children were born. Although the statute requires a plaintiff to bring an action within two years of the time the "injury" is "sustained," plaintiffs argue that the limitations period did not begin to run until the plaintiffs were on notice that the eye conditions might have been related to Benlate exposure.

### The Limitations Period Did Not Begin to Run Until Plaintiffs Should Have Known that Benlate Could Have Caused the Birth Defects

■ The fate of the plaintiffs' claims depends on the proper interpretation of Title 10, Section 8119 of the Delaware Code. Section 8119 bars any personal injury damage action that is "brought after the expiration of 2 years from the date upon which it is claimed that such alleged inju-

---

ber 3, 1993. Blake Ison was born on November 13, 1993.

**3.** 10 *Del. C.* § 8119. ("No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained. . . .")

**4.** The youngest child was born on November 13, 1993, roughly four years before a complaint was filed.

**5.** *Ison v. E.I. duPont de Nemours and Co.,* 2002 WL 962205 (Del.Super.) *("Ison S.J. Op.").* The actions of the remaining two families were not dismissed, and therefore these families are not parties to this appeal. One family presented a breach of warranty claim that the trial judge did not dismiss. DuPont did not seek the dismissal of the other family's claim. Trial for these cases is scheduled to begin this year.

ries were sustained[.]" [6] Although the "injuries" were physically "sustained" by the children in utero, the plaintiffs ask this Court to apply the time of discovery exception [7] to their actions on the ground that the "injuries" for purposes of Section 8119 were not "sustained"—and thus the two-year clock did not begin running—until 1996, when the plaintiffs were first on notice of a possible connection between the children's eye conditions and their mothers' exposure to Benlate.

Summary judgment in favor of DuPont may be granted only if the facts, viewed in a light most favorable to each of the plaintiffs, "predominate toward the conclusion that the plaintiff is chargeable with knowledge that his harmful physical condition was attributable" to DuPont's product.[8] Plaintiffs contend that, until 1996, no one in the medical community had characterized the birth defects as possible tortious injuries. In accordance with the discovery exception, the trial judge should have determined that the statute of limitations did not start to run until the children's parents were on notice that a legally actionable injury existed.

### The Time of Discovery Exception Applies to the Plaintiffs' Claims

Plaintiffs' actions fall into a category of cases where Section 8119 does not operate perfectly. Normally, an "injury" is "sustained" when a wrongful act or omission occurs.[9] Situations arise, however, where the moment of the wrongful act and the plaintiff's discovery of the injury do not occur within close proximity of each other. In appropriate circumstances, this Court has applied an exception to the limitations period by interpreting it to run at the time the plaintiff is on notice that he or she has sustained a tortious injury. As we held in *Layton v. Allen,* Section 8119 is ambiguous because an "injury" is "sustained" either at the time the wrongful act is committed or at the time the plaintiff should have discovered the injury.[10]

The discovery exception prevents the operation of Section 8119 from presenting the plaintiff with a Hobson's choice.[11] The General Assembly could not reasonably have intended to "grant a remedy for a wrong but to bar the remedy before the wrong was physically ascertainable." [12] Thus, in *Layton v. Allen* this Court established the discovery exception and held that the limitations period did not begin to run when the defendant, a surgeon, left an undetected metallic instrument in the plaintiff.[13] Because the plaintiff did not suffer any complications from the defendant's negligent conduct until seven years later, the "injury," for Section 8119 pur-

6. 10 *Del. C.* § 8119.

7. *See Layton v. Allen,* 246 A.2d 794 (Del. 1968).

8. *See In re Asbestos Litig.,* 673 A.2d 159, 163 (Del.1996).

9. *See McNutt v. Delaware Racing Ass'n,* 294 A.2d 838, 839 (Del.1972).

10. *See Layton,* 246 A.2d at 796.

11. *See Condon v. A.H. Robins Co.,* 217 Neb. 60, 349 N.W.2d 622, 625 (1984) ("It seems to us that it would be a Hobson's choice to suggest, on the one hand, that one could not maintain a cause of action unless and until one could show not only a breach of duty but an injury or damage ... and, on the other hand, to suggest that the time for bringing that action could begin and terminate before the individual could either reasonably be aware of the injury or damage or be able in any manner to establish its existence.").

12. *Layton,* 246 A.2d at 797.

13. *Id.* at 798.

poses, could not be deemed "sustained" until the harm manifested itself.[14]

Since *Layton*, this Court and the Superior Court have applied the discovery exception to defer the running of the Section 8119 limitations period in circumstances where the plaintiff has been exposed to a toxic substance, but the nature of the injury involves a latency period where the harmful effects of the toxic exposure are not discoverable for several years.[15] Asbestos claims are the most notable examples.[16]

The trial judge here held that the statute of limitations commenced when the children were born, noting that we have held, under different circumstances, that the discovery exception applies only until the identification of the physical condition rather than the cause of that condition.[17] For example, the discovery exception is not available to claimants who suffer injury from an identifiable cause and nevertheless ignore their injuries during the limitations period.[18] But that is not the case before us. The plaintiffs were not "cognizant of the fact of having sustained an injury" and could not have been expected to bring suit during the time in which they were not on notice that a potential claim existed.[19]

■ The trial judge correctly noted the plaintiffs face a dilemma that this Court did not address directly in the latent inju-

---

14. *Id.*

15. *See, e.g., Christian v. Estee Lauder, Inc.,* 1992 WL 19948 (Del.Super.), at *1 (holding that the discovery exception applies to latent injuries allegedly caused by exposure to cosmetics); *Iocono v. Air Products,* 1993 WL 318857 (Del.Super.), at *1–*2 (holding that the statute of limitations was deferred for injuries arising from plaintiff's exposure to benzene until the plaintiff suffered coronary problems that placed him on notice of the injury); *Jackson v. Wilmington Housing Authority,* 1986 WL 4567, (Del.Super.), at *1 (suggesting that the time of discovery exception applies to injuries arising from lead-based paint poisoning).

16. *See In re Asbestos Litig.,* 673 A.2d at 163; *Bendix Corp. v. Stagg,* 486 A.2d 1150, 1152 (Del.1984).

17. *Ison S.J. Op.,* 2002 WL 962205, at *3 (stating "there need not be a diagnosis of the *cause* of the injury; only a correct diagnosis of the malady from which the plaintiff suffers") (citing *Collins v. Wilmington Medical Center, Inc.,* 319 A.2d 107, 108 (Del.1974)).

18. *See Greco v. Univ. of Delaware,* 619 A.2d 900, 904–05 (Del.1993). In *Greco*, the plaintiff sought medical attention from a student health center for nausea, dizziness, and other problems. The plaintiff had been taking an oral contraceptive at the time. The physician at the health center failed to connect the oral contraceptives to the symptoms and did not advise her to stop using the contraceptive. The plaintiff later suffered a grand mal seizure and was properly diagnosed with mesenteric vein thrombosis, resulting from continued use of the contraceptive. This Court held that Section 8119 began to run at the time her symptoms began rather than the time she had been formally diagnosed with the thrombosis. *See also Collins,* 319 A.2d at 107–08. In *Collins*, plaintiff experienced pain that persisted after the defendant physician performed an operation. The doctor was unable to provide relief and referred the plaintiff to a specialist for further treatment. *Id.* This Court held that Section 8119 began to run at the time the plaintiff suffered the complications rather than the time the specialist formally diagnosed her problem. *Id.*

19. *See Cole v. Delaware League for Planned Parenthood,* 530 A.2d 1119, 1124 (Del.1987). In *Cole*, the defendant performed the plaintiff's abortion. Over two years later, Plaintiff discovered she was sterile because of the defendant's alleged negligence. *Id.* at 1125. This Court reversed the trial judge, holding that sufficient evidence did not exist to find that plaintiff "surely knew" she had sustained an injury at the time of the abortion. *Id.* Section 8119 should have been determined to run at the time plaintiff was informed of test results that would place her on notice that she was sterile. *Id.* at 1125–26.

ry cases. The latent injury claims involved circumstances where the injurious consequences of the wrongful conduct developed over time. Here, the birth defects appeared almost immediately, but the plaintiffs were not on notice until years later that the defects were the possible consequences of the alleged wrongful conduct. The trial judge decided not to apply the discovery exception beyond the time the children were born because the eye conditions were manifest at birth.[20] The principles developed in *Layton* and its progeny require us, however, to hold that the limitations period does not begin to run until the plaintiffs were on notice that the injury may be tortiously caused by the defendant's product.[21]

To apply the discovery exception, the court must conduct a fact-intensive inquiry to determine whether a plaintiff was blamelessly ignorant of a potential claim or dilatory in pursuing the action.[22] A plaintiff may remain blamelessly ignorant of the potential claim even after a latent injury reveals itself through physical ailments. The limitations period for a toxic tort does not begin immediately upon the onset of physical problems if the symptoms are reasonably attributable to another cause and the plaintiff is not on notice of the tortious cause.[23] This Court's decision in the case of *In re Asbestos Litigation*, for example, applied the discovery exception to defer the limitations period during the time period in which the plaintiff believed he suffered from asbestosis but his physicians told him that his problems were unrelated to asbestos exposure.[24] In both the *Asbestos Litigation* and the case before us, the plaintiffs suffered a physical condition that could not be attributed to a tortious injury until someone from the scientific community found and revealed publicly a link between the physical condition and the exposure to the toxic substance.[25]

Plaintiffs contend that before 1996, the plaintiffs' "injuries" were no less hidden than a latent disease or the undiscovered implanted metal instrument discussed in *Layton*. The birth defects were present when the children were born, but the "legal injury" was not "sustained" at that time because the potential tortious cause was not then publicly known in the scientific community. The discovery exception, therefore, starts the limitations period running only "when a legal injury is sustained."[26] Thus, the statute of limitations

---

**20.** *Ison S.J. Op.*, 2002 WL 962205, at *3.

**21.** The statute begins to run when a plaintiff is chargeable with knowing that his or her rights have been violated rather than when he or she actually learns about the violation. *See In re Asbestos Litig.*, 673 A.2d at 163.

**22.** In addressing asbestos claims, we have listed several factors to consider: (1) the plaintiff's level of knowledge and education; (2) the extent of his recourse to medical evaluation; (3) the consistency of the medical diagnosis; and (4) plaintiff's follow-up efforts during the period of latency following initial recourse to medical evaluation. *Id.*

**23.** *See Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1132 (Del.Super.1985) (noting the "spe-

cial problems surrounding latent disease cases where the same exposure may lead to separate and distinct diseases and the symptoms of each disease may become manifest years apart") *aff'd sub nom. Keene Corp. v. Sheppard*, 503 A.2d 192 (Del.1986).

**24.** *In re Asbestos Litig.*, 673 A.2d at 162 ("Mere exposure to asbestos accompanied by symptomatology associated with asbestosis may not suffice ... to render a plaintiff chargeable with knowledge that his harm is attributable to asbestos exposure where there is uncertainty in medical diagnosis.").

**25.** *In re Asbestos Litig.*, 673 A.2d at 163.

**26.** *Stagg v. Bendix Corp.*, 472 A.2d 40, 43 (Del.Super.1984) *aff'd* 486 A.2d 1150 (Del.

period began to run when plaintiffs were on notice of a potential tort claim.

### The General Assembly Has Not Expressed An Intent to Limit the Discovery Exception Employed Under Section 8119

■ By applying the discovery exception to the plaintiffs' claims, DuPont argues that we are contradicting the intentions of the General Assembly. According to DuPont, if this Court fashions the discovery exception to account for a plaintiff's inability to establish some causal link between the injury and the breach of duty, we will have redefined Section 8119 to operate functionally as an accrual statute because the discovery analysis does not focus on the date of the physical injury. DuPont notes that while other provisions in Title 10 of the Delaware Code set the limitations period to run when the plaintiff's cause of action accrues, the General Assembly continues to employ the time of the injury as the starting point for the limitations period in Section 8119.[27] Because the General Assembly has chosen not to set the limitations period to begin at the time the cause of action "accrues," DuPont contends that the discovery exception cannot be applied to circumstances where the physical ailment is visible but the cause of the physical problem is unknown. We disagree.

■ Applying the discovery exception to the plaintiffs' claims does not transform Section 8119 into an accrual statute. An action "accrues" for limitations purposes at the time of the wrongful act.[28] This is also the moment at which a time-of-injury limitations period commences.[29] Absent the discovery exception, the plaintiffs' causes of action would be time-barred under either a time-of-injury or accrual statute.[30] The accrual statutes set forth in Title 10 of the Delaware Code do not affect the application of the discovery exception.[31]

1984). *See also Layton*, 246 A.2d at 797 (noting that in the typical tort case the physical impact starts the limitations period because the impact "serves to notify the plaintiff of the violation of his rights before the expiration of the period of limitations"). Several other authorities make a similar distinction between physical injury and legal injury. *See* BLACK'S LAW DICTIONARY 789 (7th ed.1999) (noting that the primary definition of "injury" is "The violation of another's legal right, for which the law provides a remedy"); RESTATEMENT (SECOND) OF TORTS § 7 (1965) (defining "injury" as "the invasion of any legally protected interest of another"); *see also Condon*, 349 N.W.2d at 627 (noting that "injury" for purposes of a statute of limitations must be defined "in the legal sense," and legal injury does not "'occur' until it has sufficiently manifested itself so that a reasonable person knows, or . . . should have discovered, the injury or damage").

27. *Compare* 10 *Del. C.* § 8119 *with* 10 *Del. C.* § 8106 (actions subject to 3–year limitations begin upon accrual of the cause of action); 10 *Del. C.* § 8107 (limitations for wrongful death begins upon the "accruing of the cause of such action").

28. *See, e.g., Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130, 132 (Del.1974) (noting that an accrual statute "begins to run at the time of the wrongful act"); *see also Mastellone v. Argo Oil Corp.*, 82 A.2d 379 (Del.1951).

29. *McNutt*, 294 A.2d at 839.

30. Because in many circumstances there is little difference between the effect of an accrual statute and a time-of-injury statute, this Court has also applied the discovery exception to accrual causes of action. *See Isaacson*, 330 A.2d at 133.

31. In *Layton*, this Court cited with approval decisions from other jurisdictions that reach a result similar to the discovery exception even though these decisions were based on an "accrual" statute. 246 A.2d at 800 ("While we do not adopt the discovery rule as such because . . . [Section 8119] is not an 'accrual' statute, it is noteworthy that the result we reach is consistent with the strong trend of modern authority on the subject.").

DuPont also argues that the enactment of an unrelated statute, Section 8131, precludes this Court from applying the discovery exception to claims that involve toxic exposure. Title 10, Section 8131 sets forth the limitations period for members of the armed services who were exposed to Agent Orange during the Vietnam War.[32] The Section 8131 limitations period commences on the date the injured plaintiff is informed by a licensed physician that his injuries may have been caused by exposure to Agent Orange.[33] DuPont argues that had the General Assembly intended to grant a similar exception to all plaintiffs who are the victims of toxic exposure, it would not have limited the scope of Section 8131 to apply only for service personnel.

Because the plaintiffs' claims do not involve "Indochina herbicide exposure," Section 8131 is irrelevant to our analysis. In *Bendix* we noted that the General Assembly's adoption of a special limitations period for servicemen exposed to Agent Orange does not evidence any intention by the General Assembly to modify Section 8119 or our interpretation of Section 8119.[34] Absent a specific enactment by the General Assembly to the contrary, we will not interpret Section 8119 in a fashion that time-bars the claims of the blamelessly ignorant plaintiffs before us.[35]

### *Conclusion*

We reverse the judgment of the Superior Court and remand this case to that Court for further proceedings consistent with this opinion. Pursuant to Supreme Court Rule 18, the time within which a motion for reargument may be filed in this matter is shortened to seven days from the date of this Opinion.

**32.** 10 *Del. C.* § 8131. Section 8131 provides, in part:

> (a) Notwithstanding any other provision to the contrary, the time limitation for an action to recover damages for wrongful death or for personal injuries suffered by a member or former member of the armed forces of the United States, who served as a member of the armed forces ... in Indochina between January 1, 1962, and May 7, 1975, inclusive, due to exposure to phenoxy herbicides, including but not limited to exposure to substances known as Agent Orange ... shall not expire until 2 years has elapsed from the date that said person has been told by a licensed physician ... that the injuries or death may be related, in whole or in part, to exposure to phenoxy herbicides.

**33.** *Id.*

**34.** *Bendix*, 486 A.2d at 1153.

**35.** *See id.* ("Until the General Assembly does so act [to create a special limitations period for specific causes of action], we will not interpret 10 *Del. C.* § 8119 to do an injustice to those inflicted with an inherently unknowable disease....").