**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

SARAH ANN BERTOLA and )
DALLAS BERTOLA, )
Co-Personal Representatives of the ) C.A. No. N21C-01-115 FJJ
Estate of A.M.B., Deceased )
and in their own right )
           Plaintiffs, )
)
v. )
)
FISHER-PRICE, INC., and )
MATTEL, INC., )
           Defendants. )

Submitted: April 11, 2024
Decided: April 21, 2025

**<u>OPINION AND ORDER</u>**

*On Defendants' Motion for Summary Judgment on the Statute of Limitations*
**DENIED**

*Robert J. Leoni, Esquire,* Shelsby & Leoni, Newark, Delaware and *Alan M. Feldman, Daniel J. Mann,* and *Edward S. Goldis, Esquires*, (Pro Hac Vice) Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig, LLP, Philadelphia, Pennsylvania, *Attorneys for Plaintiffs*.

*Jennifer C. Wasson, Esquire, and Ryan D. Kingshill, Esquire*, Potter Anderson & Corroon, LLP, Wilmington, Delaware, and *Amy Furness, Esquire,* (Pro Hac Vice) Carlton Fields, P.A., Miami, Florida and *Robert Shannon, Esquire*, (Pro Hac Vice) Carlton Fields, P.A., Atlanta, Georgia, *Attorneys for Defendants*.

**Jones, J.**

**INTRODUCTION**

Plaintiffs, Sarah Ann Bertola and Dallas Bertola on behalf of themselves and as representatives of A.M.B's estate (hereinafter "Plaintiffs"), bring product liability claims against Defendants, Fisher-Price and Mattel, Inc., for the death of their infant child, A.M.B. Plaintiffs allege A.M.B. asphyxiated and suffocated while sleeping in Defendants' Rock 'N Play Sleeper (hereinafter "RnP"). Plaintiffs claim product deficiencies and improper marketing and sale of the RnP as a safe product for an infant to sleep in unattended caused A.M.B's death. Defendants bring the instant Motion for Summary Judgment asking the Court to conclude that Plaintiffs' claims are barred by the applicable statute of limitations.

## FACTS AND PROCEDURAL HISTORY

A. <u>The Rock 'N Play Sleeper ("RnP")</u>

The RnP was sold as "an inclined sleeping product" intended for day or overnight sleep "in which infants are placed supine (on their backs) at less than a 30-degree angle from the horizontal."[1] The product consists of a "free-standing metal rocking frame, an attached rigid plastic backing, a removable seat pad with fabric cover, and a three-point belt restraint system."[2] The restraint system "secured a strap between the infant's legs and across the torso."[3]

---

[1] Docket Item ("D.I.") 164, Ex. B, Aff. of Jennifer Mussell, 1/30/24.
[2] *Id.*
[3] *Id.*

B. The Incident

Sarah Bertola, A.M.B.'s mother, received her RnP as a baby shower gift from her sisters.[4] In the evening of January 4, 2017, Ms. Bertola put A.M.B. to sleep in the RnP on her back and swaddled in a blanket.[5] The restraint system was not being used due to A.M.B.'s swaddle hindering it.[6] The RnP was located in A.M.B.'s nursery.[7] Ms. Bertola then went to her bedroom to watch TV with her husband, A.M.B.'s father, Dallas Bertola.[8] Around 2:00 in the morning, Ms. Bertola checked on A.M.B, who appeared to be fine, and placed a blanket around her waist.[9] At 10:10 in the morning on January 5, 2017, Ms. Bertola woke up concerned she had not heard A.M.B.[10] When she went to check on A.M.B., she found her "slumped down in the RNPS with her head tilted downwards to the right and her chin on her shoulder."[11] The blanket Ms. Bertola had placed on A.M.B. in the middle of the night was now "covering A.M.B.'s face up to the pacifier that was in her mouth."[12] Ms. Bertola yelled out to her husband in their bedroom and attempted CPR.[13] Emergency authorities were called to the scene but could not revive A.M.B.[14] The infant's death

[4] D.I. 164 p. 8.
[5] D.I. 194 p. 12.
[6] D.I. 164 p. 9.
[7] *Id.*
[8] *Id.*
[9] D.I. 194 p. 12-13.
[10] *Id.* at 13.
[11] *Id.*, Ex. BB, Sarah Bertola Dep. at 256-57.
[12] *Id.*, Ex. BB at 191-92.
[13] *Id.*
[14] *Id.*

3

was ruled by the autopsy report as a "Sudden Unexplained Infant Death" with a caused that "Could Not Be Determined."[15]

C. Facts for Inquiry Notice and Tolling Doctrine Arguments

In January of 2017,[16] Ms. Bertola made online blog posts after the death of A.M.B.[17] In one blog post Ms. Bertola stated that, "...there are some people who believe having a baby sleep in these all night is unsafe."[18] She also made a blog post stating: "However, I personally believe (and the police and my doctor have agreed with me) that [the RNPS] had nothing to do with her passing."[19] There were also comments made on her blog by laypersons questioning the safety of the Rock 'N Play Sleeper.[20]

In March of 2018, the Consumer Product Safety Commission's ("CPSC") contacted Ms. Bertola, interviewed both parents, took possession of the Rock 'N Play Sleeper, and made a report.[21] In April of 2019, the Rock 'N Play Sleeper was recalled by Defendant.[22] Defendants stated that "[i]nfant fatalities have occurred in Rock 'n Play Sleepers."[23] In January of 2023, Defendants reannounced the recall.[24]

---

[15] D.I. 164 p. 1, Ex. A at 1.
[16] *Id.* at 5, 19.
[17] D.I. 196 p. 19.
[18] D.I. 160 p. 18, Ex. M.
[19] D.I. 196 p. 19, Ex. E; *see also* Exs. F; G.
[20] D.I. 160 p. 4, 18.
[21] D.I. 160 p. 2, 19, *see also* Exs. C; J.
[22] *Id.* p. 3.
[23] D.I. 196 p. 3, Ex. A.
[24] Id. 4-6, Ex. F.

D. Procedural History

Plaintiffs filed suit on January 15, 2021.[25] Defendants filed the instant Motion for Summary on January 31, 2024.[26] Full briefing has concluded with Plaintiffs filing their Answering Brief in Opposition on March 11, 2024[27] and Defendants filing their Reply Brief on April 11, 2024.[28] The larger than usual period of time between briefing and this opinion is due to continuances in this case as well as in the litigation involving the product in general.

## CHOICE OF LAW

The accident initiating this case occurred in Utah. The parties agree that Utah substantive law applies to this case,[29] and this Court will so apply it. The general rule is to apply procedural law of the forum.[30] In the instant case, the forum is Delaware; therefore, Delaware procedural law is applicable.

## STANDARD OF REVIEW

Superior Court Civil Rule 56(c) states a party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[31] A genuine issue of material fact

---

[25] D.I. 1.
[26] D.I. 160.
[27] D.I. 196.
[28] D.I. 214.
[29] *See* D.I. 145, Stipulation and Order on Choice of Law.
[30] *Chaplake Holdings, Ltd. v. Chrysler Corp.*, 766 A.2d 1, 5 (Del. 2001).
[31] Del. Super. Ct. Civ. R. 56(c).

is one that "may reasonably be resolved in favor of either party."[32] The court views the evidence provided "in a light most favorable to the non-moving party."[33] The initial burden is on the moving party to show there are no genuine issues of material fact.[34] The burden then shifts to the non-moving party to show there is at least one material issue of fact in dispute.[35] The court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," in determining whether there is a genuine issue as to any material fact, and the court must "accept all undisputed factual assertions and accept the nonmoving party's version of any disputed facts."[36] However, any factual inferences made in favor of the non-moving party must be reasonable.[37]

When a summary judgment motion is premised on a statute of limitations argument, a court must grant the motion, "if the record reveals that no genuine issue of fact exists regarding the date on which the applicable statute of limitations began to run, the date to which the statute of limitations may have been tolled, and the date on which the plaintiff filed [the] complaint with the court."[38] "When a complaint asserts a cause of action that on its face accrued outside the statute of limitations,

---

[32] *Saunders v. Lightwave Logic, Inc.*, 2024 WL 4512227, at *6 (Del. Super. Oct. 17, 2024).
[33] *Gibson v. Metro. Grp. Prop. And Casualty Ins. Co.*, 2017 WL 5606714, at *2 (Del. Super. Nov. 15, 2017).
[34] *Id.*
[35] *Id.*
[36] *Coker v. Tenney-Andrews*, 2016 WL 6659500, at *2 (Del. Super. Nov. 10, 2016).
[37] *Smith v. Haldeman*, 2012 WL 3611895, at *1 (Del. Super. Aug. 21, 2012).
[38] *Saunders*, 2024 WL 4512227, at *6 (quoting *Burrell*, 2010 WL 3706584, at *2).

'the plaintiff bears the burden to show that a viable tolling doctrine applies.'"[39]

**ANALYSIS**

I.     Delaware's Borrowing Statute
       The Delaware borrowing statute ("Borrowing Statute") provides:

> Where a cause of action arises outside of [Delaware], an action cannot
> be brought to enforce such cause of action after the expiration of
> whichever is shorter, the time limited by the law of this State, or the
> time limited by the law of the state . . . where the cause of action arose,
> for bringing an action upon such cause of action.[40]

This statute is intended to prevent plaintiffs from forum shopping by bringing stale claims in Delaware that would be time-barred in the state where the cause of action accrued.[41]   The analysis under the borrowing statute is thus a threshold inquiry: if the cause of action accrued outside of Delaware, the Court applies the shorter limitations period between Delaware and the other jurisdiction.[42]  The court in *Burrell* said:

> Delaware courts have uniformly held that when a complaint alleging a
> cause of action that arose outside of Delaware is time-barred under the
> Delaware statute of limitations, the Court need not conduct a choice of
> law analysis and may apply the Delaware statute of limitations. This
> construction recognizes that, under the borrowing statute, Delaware
> courts are obliged to apply the Delaware limitations period if it is
> "shorter" than the statute of limitations that might apply from another

---

[39] *Saunders*, 2024 WL 4512227, at *6 (quoting *Nalda v. Greeb Valley Home Inspections, LLC*, 2021 WL 3783640, at *4 (Del. Super. Aug. 24, 2021)).

[40] 10 Del. C. § 8121; *see Olsen v. Fisher-Price, Inc.*, 2022 WL 18359407, at *4 (Del. Super. Dec. 30, 2022) (explaining the operation of Delaware's Borrowing Statute).

[41] *Pack v. Beech Aircraft Corp.*, 132 A.2d 54, 58 (Del. 1957).

[42] *See Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, Inc., 866 A.2d 1, 17 (Del. 2005); *Burrell v. AstraZeneca LP*, 2010 WL 3706584, at *4 (Del. Super. Sept. 20, 2010).

jurisdiction. Thus, if the claim fails under the Delaware statute of limitations (with "accoutrements"), it is time barred as a matter of law.[43]

Defendants contend that Plaintiffs' cause of action arose in Utah, where Plaintiffs resided and used the RnP. Because both Delaware and Utah have a two-year statute of limitations for personal injury claims, Defendants argue that the borrowing statute mandates application of the two-year period and bars the claim, which was filed more than two years after the alleged injury occurred.

Plaintiffs agree that the borrowing statute applies and that the Court should apply the shorter of the two states' limitations periods. However, Plaintiffs argue that tolling doctrines under Delaware law (or alternatively Utah law) extend the period for filing. Because Delaware's borrowing statute does not displace Delaware's own tolling principles, Plaintiffs contend that the claim survives.

There is no dispute that the injury at issue occurred in Utah, and thus, under § 8121, the borrowing statute applies. Since both Utah and Delaware prescribe a two-year limitations period for personal injury, the Court proceeds under that framework. The relevant question is not which state's limitations period applies, but whether tolling doctrines—particularly under Delaware law—extend or suspend the running of the limitations period. As the Supreme Court of Delaware has clarified, Delaware's tolling doctrines apply even when Delaware borrows another state's

---

[43] *Burrell*, 2010 WL 3706584, at *4.

limitations period.[44]   Therefore, the Court must evaluate whether Plaintiffs pled sufficient facts to support tolling under Delaware law.

## II.   Tolling Doctrines

The critical question is whether tolling doctrines apply to delay the accrual of Plaintiffs' claims prior to January 15, 2021, which is two years prior to the filing of the Complaint.   Under Delaware law, the statute of limitations may be tolled under three relevant doctrines: equitable tolling,[45] the time-of-discovery rule (also referred to as the "inherently unknowable injury" doctrine),[46] and fraudulent concealment.[47] "[I]t is Plaintiffs' burden to 'demonstrate that the statute of limitations period should be tolled.'"[48]

### a.   Time-of-Discovery Doctrine

Delaware courts recognize that the statute of limitations may be tolled when "the injury is inherently unknowable and the claimant is blamelessly ignorant" of the wrongful act and injury."[49]   In such circumstances, the statute of limitations does not begin to run until "the discovery of facts constituting the basis of the cause of

---

[44] *See Saudi Basic*, 866 A.2d at 17.
[45] *In re Dean Witter P'ship Litigation*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998).
[46] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co*., 860 A.2d 312, 319 (Del. 2004).
[47] *Certainteed Corp. v. Celotex Corp*., 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005).
[48] *Burrell*, 2010 WL 3706584, at *4 (citing *Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006); *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 586 (Del. Ch. 2007)).
[49] *Wal-Mart Stores Inc.,* 860 A.2d at 319.

action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery" of those facts.[50]

Defendants argue that Plaintiffs had sufficient notice of the injury and its cause well before January 15, 2021.[51]  They point to A.M.B.'s death and suggest that a reasonable person would have investigated the cause and discovered the connection to the product.[52]  Plaintiffs argue that their case is similar to *Brown v. E.I. Dupont de Nemours and Co., Inc.*, in which the injuries of the plaintiff manifested immediately,[53] "but the plaintiffs were not on notice until years later that the defects were the possible consequences of the alleged wrongful conduct."[54] Plaintiffs further assert that public information about the product defect was limited and that they acted diligently once put on notice of the possible link.[55]

The discovery rule presents a fact-intensive inquiry.[56]  Whether Plaintiffs should have known of the connection between the product and the injury requires factual development.  Plaintiffs alleged sufficient facts to support a plausible claim that the statute did not begin to run until the causal link was discovered. These allegations, if true, would bring the claim within the statute of limitations. The Delaware Supreme Court emphasized that when reasonable minds could differ on

---

[50] *Id.*
[51] D.I. 160 p. 16.
[52] *Id.*
[53] D.I. 196 p. 26.
[54] 820 A.2d 362, 368 (Del. 2003)
[55] D.I.196 p. 25.
[56] *Brown*, 820 A.2d at 368.

10

when the statute of limitations began to run, the question is one for the jury. The same principle applies here. This Court finds that the question of whether the incident alone or another event before the two-year statute of limitations ran were sufficient to put Plaintiffs on notice of the available cause of action or if Plaintiffs did not have sufficient notice until Fisher Price recalled the RnP must go to the jury.

### b. Fraudulent Concealment

Fraudulent concealment occurs when a defendant takes affirmative steps to conceal wrongdoing, thereby preventing the plaintiff from discovering a potential cause of action.[57] In other words, Plaintiffs must establish that Defendants knowingly and affirmatively acted in a fraudulent manner to "conceal[ ] ... the facts necessary to put [them] on notice of the truth."[58] Moreover, "[m]ere ignorance of the facts by a plaintiff, where there has been no such concealment, is no obstacle to operation of the statute [of limitations].[59] "[T]he plaintiff carries his burden of pleading facts sufficient to demonstrate the applicability of this tolling doctrine."[60]

Plaintiffs contend that Defendants fraudulently concealed the dangers of the product by failing to warn consumers, omitting relevant safety information, and

---

[57] *Shockley v. Dyer*, 456 A.2d 798 (Del. 1983); *Weiss v. Swanson*, 948 A.2d 433, 451-52 (Del. Ch. 2008).

[58] *See Gregorovich v. E.I. duPont de Nemours & Co., Inc*., 602 F.Supp.2d 511, 519 (D. Del.2009).

[59] *In re Dean Witter P'Ship Litig*., 1998 WL 442456, *6 (Del.Ch. July 17, 1998) (internal citations omitted).

[60] *Smith v. Mattia*, 2010 WL 412030, at *5 (citing *Certainteed Corp*.,2005 WL 217032, at *6. *See also Snyder*, 1992 WL 240344, at *10 ("[A]s Plaintiffs have successfully pled fraudulent concealment, the affirmative statute of limitations defense turns on a question of fact, and relief on a motion to dismiss is not appropriate. Defendants may contest at trial the factual issues as to whether they committed the affirmative act of concealment alleged; and whether Plaintiffs, by exercise of due diligence, should have discovered the concealment alleged at such time as to be barred from recovery by operation of the statute of limitations.") (citations omitted).

11

promoting the product as safe.[61] Plaintiffs argue that this concealment delayed their ability to discover the cause of injury.[62] Defendants deny any concealment and argue that public sources, including federal agency reports, would have provided Plaintiffs with sufficient information to connect the product to the injury had they exercised diligence.

Such allegations, if proven, could support a finding that Defendants engaged in fraudulent concealment, thereby tolling the statute of limitations. The question of whether Defendants took affirmative steps to mislead consumers and regulators is factual and not appropriate for resolution on summary judgment. Whether Defendants' acts constitute fraudulent concealment is a question for the jury.

III.   Inquiry Notice

Inquiry notice arises when a plaintiff possesses facts sufficient to prompt a reasonable person to investigate further.[63] "If the limitations period is tolled . . . it is only tolled until a plaintiff discovers, or by exercising reasonable diligence should have discovered, his injury."[64] Therefore, "... the limitations period begins to run when the plaintiff is objectively aware of the facts giving rise to the wrong, i.e. on inquiry notice."[65] In order to show whether a plaintiff was on "inquiry notice," the

---

[61] D.I. 196 p. 29-30.
[62] *Id.* p. 30.
[63] *Wal-Mart Stores Inc.,* 860 A.2d at 319.
[64] *Weiss*, 948 A.2d at 451.
[65] *Id.*

12

court must consider whether there "were red flag[s] that clearly and unmistakably would have led a prudent person of ordinary intelligence to inquire' and if pursued, would have led to discovery of the elements of the claim being asserted."[66]

Defendants argue that Plaintiffs' online blog posts suggest that they were on inquiry notice after their infant's death.[67] The Defendants go on to say that communication with the CPSC shows that Plaintiffs suspected the product was defective, triggering a duty to investigate.[68] Defendants characterizes the CPSC contact as evidence that Plaintiffs were on inquiry notice well before the limitations period expired.[69] Plaintiffs argue that there was no inquiry notice prior to the recall.[70] They go on to say that the CPSC contact was preliminary, made without full awareness of the nature or cause of the death, and that it did not trigger the duty to investigate.[71] Plaintiffs assert they did not possess sufficient facts to warrant suspicion until further information came to light and comments made by laypersons are insufficient.[72]

Whether Plaintiffs should have been prompted to investigate further is a factual question. This Court has recognized that, due to the complexity of product defects and the potential for a defendant's concealment, the question of whether a

---

[66] *Van Lake v. Sorin CRM USA, Inc*., 2013 WL 1087583 at *7 (Del. Super. Ct. 2013).
[67] D.I. 160 p. 18.
[68] *Id.*
[69] *Id.*
[70] D.I. 196 p. 32.
[71] *Id.* p. 18.
[72] *Id.*

13

party was on notice to investigate is best reserved for the trier of fact.[73]  Therefore, this Court cannot say whether Plaintiffs should have immediately suspected the RnP and undertaken a legal inquiry upon being contacted by the CPSC or after seeing comments on a blog post.

## IV.    Utah Law

Utah law provides a two-year limitations period for personal injury claims arising from defective products.[74]  Like Delaware, Utah applies a discovery rule under which a claim does not accrue until the plaintiff knew or should have known of the injury and its cause.[75]   Written within Utah's Product Liability Act ("UPLA"),[76]  for the discovery rule to apply, a plaintiff must act with reasonable diligence in identifying both the harm suffered and its causal connection to the defendant's allegedly defective product.[77]   Utah recognizes equitable tolling for fraudulent concealment as well and applies a comparable "inquiry notice" standard to Delaware, which is typically considered a factual issue reserved for the jury.[78]

Defendants argue that Plaintiffs' claim is barred under Utah law for the same reasons as under Delaware law—namely, that Plaintiffs had sufficient notice well before 2021. Plaintiffs argue that Utah's tolling doctrines, like Delaware's, preserve

---

[73] S&R Assocs., L.P. v. Shell Oil Co., 725 A.2d 431, 439 (Del. Super. Ct. 1998).
[74] Utah Code Ann. § 78B-2-307.
[75] *Daniels v. Gamma West Brachytherapy, LLC*, 221 P.3d 256 (Utah 2009).
[76] Utah Code Ann. §§78B-6-701 to 707,
[77] *Aragon v. Clover Club Food Co.*, 857 P.2d 250, 253 (Utah Ct. App. 1993).
[78] *Aragon*, 857 P.2d at 253; *Smith v. Ford Motor Co.*, 2020 WL 8167608 (D. Utah 2020).

the claim. Plaintiffs point to the delayed discovery of the cause of death and Defendants' alleged concealment as grounds for equitable tolling.

Given the overlap in tolling doctrines between Delaware and Utah, and because Delaware's borrowing statute preserves Delaware's tolling principles, the Court need not resolve which state's tolling law ultimately controls. Plaintiffs alleged facts sufficient to invoke tolling under either framework. Therefore, under both Delaware and Utah law, the claims may proceed.

Therefore, the Court **DENIES** Defendants' summary judgment motion as to the Statute of Limitations argument.

## CONCLUSION

Based on the above reasons, Defendants' Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*

Francis J. Jones, Jr., Judge

cc:    *File&ServeXpress*

15