# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| In re: Zantac (Ranitidine) Litigation | ) ) ) ) | General Zantac Litigation |
|  |  | C.A. No.: N22C-09-101 ZAN |

Submitted: January 22, 2026
Decided: January 29, 2026

## OPINION AND ORDER
*On Defendants' Omnibus Motion to Dismiss*
*Time-Barred Cases Filed by Pulaski Kherkher, PLLC*

## GRANTED

*Bernard G. Conway*, Esquire, Conaway Legal LLC, Wilmington, Delaware, *Raeann Warner*, Esquire, Collins Price & Warner, Wilmington, Delaware, *Stephen T. Morrow* and *Joseph J. Rhoades*, Esquires, Rhoades & Morrow LLC, Wilmington, Delaware, Adam Pulaski, Pulaski Kherkher PL (argued), Jennifer A. Moore, Esquire (Pro Hac Vice), Moore Law Group, PLLC Louisville, Kentucky, R. Brent Wisner, Esquire (Pro Hac Vice), Wisner Baum LLP, Greenbrae, California, *Attorneys for Plaintiffs*.

*Sean T O'Kelly* and *Gerard M. O'Rourke*, Esquires, O'Kelly & O'Rourke, LLC, Wilmington, Delaware, *Christopher R. Carton, John D. Garrett,* and *Edward L. O'Toole*, Esquires (Pro Hac Vice), Bowman and Brooke LLC, *Attorneys for Defendant Patheon Manufacturing Services LLC*

*Joseph S. Naylor*, Esquire, Swartz Campbell LLC, Wilmington, Delaware Gregory Ruehlmann*, Esquire (argued) (Pro Hac Vice), King & Spalding LLP, Atlanta, Georgia, *Attorneys for Brand Defendants*.

**Jones J.**

## INTRODUCTION

Defendants Bohringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim USA Corporation, and Patheon Manufacturing Services, LLC (collectively "Defendants") have moved to dismiss 277 cases filed by the law firm of Pulaski Kherkher, PLLC on the grounds that the claims are barred by the applicable statute of limitations.[1] This is the Court's decision on the Motion.

## STANDARD OF REVIEW

Rule 12(b)(6) allows the Court to dismiss for failure to state a claim upon which relief can be granted.[2] While ruling on a motion to dismiss, the Court:

> (1) accept[s] all well pleaded factual allegations as true, (2) accept[s] even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonable conceivable set of circumstances.[3]

Delaware is a notice pleading jurisdiction.[4] Therefore, for a complaint to pass the motion to dismiss stage it needs to provide only "general notice of the claim asserted."[5] "An allegation, 'though vague or lacking in detail' can still be well-pleaded so long as it puts the opposing party on notice of the claim brought against it."[6]

---

[1] Docket Item ("D.I.") 499.
[2] Super. Ct. Civ. R. 12(b)(6).
[3] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings*, 27 A.3d 531, 535 (Del. 2011).
[4] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[5] *Id.* (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).
[6] *Cahill*, 884 A.2d at 458 (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003)).

**FACTS AND PARTY CONTENTIONS**

Pulaski Kherkher represents over 3,500 Plaintiffs in the Zantac litigation before this Court.[7] The instant motion involves 277 of those cases.[8] In 24 of these cases, Plaintiffs' diagnoses of cancer were made at least two years prior to April 1, 2020.[9] In the remaining 253 cases, the Plaintiffs were diagnosed with cancer after April 1, 2020 and did not file suit within two years of diagnosis.[10] On April 1, 2020, the FDA publicly announced its request that manufacturers voluntarily withdraw all prescription and over-the-counter ranitidine drugs from the market due to NDMA, a probable human carcinogen.[11]

Defendants contend that the Delaware two-year statute of limitations applies, and the disputed claims are time barred.[12] Defendants maintain that as a matter of law each Plaintiff is charged with having the knowledge required to start the statute running as of April 1, 2020 – the publication date of the FDA order.[13] Thus, the claims with cancer diagnoses at least two years prior to April 1, 2020 are time barred because the statute started to run on April 1, 2020 and no Delaware case was filed before August 3, 2022.[14] Additionally, for Plaintiffs whose diagnoses occurred after

---

[7] D.I. 499 p.3.
[8] *Id.* p.1.
[9] *Id.* p.6 (citing Exhibit ("Ex.") B).
[10] *Id.* p.6. (citing Ex. C).
[11] *Id.* p.2.
[12] *Id.* p.6.
[13] *Id.* p.8-10.
[14] *Id.* p.10.

April 1, 2020, Defendants contend the statute begins running as of the date of diagnosis.[15]

Plaintiffs oppose.[16] First, Plaintiffs maintain that the Delaware statute of limitations does not necessarily apply.[17] Second, Plaintiffs maintain that an individual factual assessment involving each Plaintiff must be done to determine when the Plaintiff knew of the relationship between their cancer and ingestion of ranitidine drugs.[18] Plaintiffs reject the notion that the FDA notice as a matter of law gives the Plaintiff adequate notice to trigger the statute of limitations defense.[19]

## ANALYSIS

The first question that must be addressed is what state's law governs the statute of limitations issue. Typically, the forum state's law, in this case Delaware, governs the statute of limitations issue.[20]

To avoid forum shopping concerns, the General Assembly enacted Delaware's borrowing statute:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who

---

[15] *Id.* p.2-3; 7.
[16] *See* D.I. 511.
[17] *Id.* p.10-16.
[18] *Id.* p.7-9.
[19] *Id.* p.8-9.
[20] *Pack v. Beech Aircraft Corp.*, 132 A.2d 54, 75 (Del. 1957).

4

at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.[21]

Defendants contend Delaware's two-year statute is the longest that could apply pursuant to the borrowing statute.[22] Thus, another state's shorter limitations period would not disrupt Defendants' argument that Plaintiffs' claims are time-barred.

Plaintiffs rely upon *Saudi Basic Industry Corporation v. Mobil Tanbu Petrochemical* to dispute the application of the borrowing statute.[23] In *Saudi Basic*, the Delaware Supreme Court denied extending the borrowing statute to a scenario in which a party brought an action in Delaware seeking the shorter Delaware limitations period to dismiss the compulsory counterclaims against them.[24] The Court reasoned applying the borrowing statute under this circumstance would "subvert the statute's fundamental purpose" of preventing forum shopping.[25]

Since *Saudi Basic*, case law interpretations have leaned towards taking either a broad or narrow approach of the case's holding.[26] The broad approach focuses on the "anti-forum-shopping policy rationale" and "interprets *Saudi Basic* to hold that the borrowing statute does *not* apply whenever the Delaware limitations period is

---

[21] 10 *Del. C.* § 8121.
[22] D.I. 499 p.5 fn.5.
[23] D.I. 511 p. 11 (citing *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.*, 866 A.2d 1 (Del 2005)).
[24] *Saudi Basic*, 866 A.2d at 17-18. The scenario in *Saudi Basic* differs from the "standard scenario" under which the borrowing statute "operates to prevent the plaintiff from circumventing the shorter limitations period mandated by the jurisdiction where the cause of action arose." *Id.*at 16. Nonetheless, the *Saudi Basic* defendant's interpretation of the borrowing statute frustrates its purpose. *Id.*
[25] *Id.* at 17.
[26] *CHC Inv., LLC v. FirstSun Capital Bancorp*, 2020 WL 1480857, at *5-6 (Del. Ch. Mar. 23, 2020).

shorter than the limitations period of the foreign jurisdiction where the claim arose."[27] However, as the Court of Chancery noted in *CHC Investment v. FirstSun Capital Bancorp*, this approach sidesteps the statutory construction of the borrowing statute and ignores the principle that "courts are permitted to ignore the plain language of a statute only when 'absurdity or injustice would result from a strict construction.'"[28] The broad approach also "departs dramatically from the common law rule that the forum state supplies the limitations period" by "*never* appl[ying] the forum's limitations period."[29]

On the other hand, the narrow approach "interprets *Saudi Basic* to hold that the plain language of the borrowing statute governs unless the party asserting the underlying claim was forced into a Delaware forum."[30] The *CHC Investment* Court adopted the narrow approach to *Saudi Basic*'s holding because it "least offends principles of statutory construction and best targets the statute's purpose."[31] In applying this approach, the Court laid out the following next steps to determine which jurisdiction's limitations period applies:

> Under the narrow approach, the court first applies the plain language of borrowing statute. If Delaware's limitations period applies, the court next determines whether the party asserting the underlying claim was forced to file in Delaware. If the party asserting the underlying claims

---

[27] *Id.* at *6 (emphasis added).
[28] *Id.* (quoting *Reddy v. PMA Ins. Co.*, 201 A.3d 1281, 1288 (Del. 2011).
[29] *CHC Inv., LLC*, 2020 WL 1480857, at *7.
[30] *Id.*
[31] *Id.* at *8.

was forced to file in Delaware, then the court applies the foreign limitations period.

Each of the parties cites the Court to President Judge Davis' opinion in *Machala v. Boehringer Ingelheim Pharms, Inc.*[32] arguing that *Machala* supports its position. *Machala* involved the drug Pradaxa. Mr. Machala was a resident of Washington D.C. which has a three year statute of limitations. *Machala* made the same argument made by the plaintiff in the instant use regarding Delaware's Borrowing statute. In rejecting *Machala's* argument President Judge Davis wrote:

> Given the facts of this case, the Court chooses to follow the majority of decisions that have applied the plain language of the Borrowing Statute in situations similar to the one presently before the Court. In *Huffington v. T.C. Group, LLC*, this Court applied the plain language of the Borrowing Statute and held that plaintiff's claim was time barred. In rendering its decision, the Court rejected plaintiff's assertion that Saudi Basic created a broad ruling limiting the Borrowing Statute to only those instances where the plaintiff seeks to avoid a jurisdiction with a shorter limitations period.
>
> The Delaware Court of Chancery reached a similar conclusion in TrustCo *Bank v. Mathews*. The court found that the Borrowing Statute applied "when a plaintiff's cause of action arose out of state, irrespective of whether the plaintiff is forum shopping." The court further explained that the application of Saudi Basic was limited to instances where "an absurd outcome or result that subverts the Borrowing Statute's fundamental purpose would otherwise occur." The court left any greater alternation of the Borrowing Statute to the Delaware Legislature.
>
> Finally, then-Chancellor, now-Chief Justice Strine reached the same conclusion in. In that case, the court refrained from any statutory analysis or legislative history of the Borrowing Statute and opted to apply the statute's plain language. The court

---

[32] 2017 WL 2814728 (Del. Super., 2017).

> succinctly held that, where the cause of action arose in New York, Delaware's shorter three-year limitations period for contract disputes applied rather than New York's six-year limitations period.
>
> Mr. Machala has pointed to no exceptional reason why the Court should depart from the clear and unambiguous language of the Borrowing Statute. Mr. Machala chose to file his claims in Delaware and is now subject to the terms of the Borrowing State. Accordingly, the Court finds that Delaware's statute of limitations governs the claims in this case.

This Court chooses to follow President Judge Davis' approach. As in *Machala*, plaintiffs in the instant case have pointed to no exceptional reason as to why the Court should depart from the clear and unambiguous language of the borrowing statute.

Plaintiffs maintain that they were forced to file in Delaware because if they had filed elsewhere their cases would have been removed to federal court where they would be subject to adverse rulings on causation. These set of facts are not facts that forced a plaintiff to file in Delaware for purposes of analyzing the claims under the borrowing statute, Similar to *Machala v. Boehringer Ingelheim Pharmaceuticals*, Plaintiffs chose to file in Delaware when they could have filed in the states where the injury occurred.[33] While this is not the standard forum-shopping for a longer limitations period scenario, it is forum shopping, nonetheless. Under the plain language of the borrowing statute and the teachings of *CHC Investments* and

---

[33] 2017 WL 2814728, at *4 (Del. Super. June 29, 2017) (applying Delaware's borrowing statute and rejecting to apply the exceptions in *Saudi Basic* and *Furnari* because Plaintiffs' forum-shopped by choosing to file in Delaware rather than being forced to).

*Machala*, Delaware's two-year statute of limitations applies to Plaintiffs' claims. It is unnecessary for the Court to conduct this analysis with a specific foreign limitations period in mind. If the foreign limitations period is longer than Delaware's, then it does not apply under the borrowing statute. If the foreign limitations period is shorter, then Plaintiffs' statute of limitations had run by the time of filing.

Having concluded that Delaware's two-year statute of limitations applies, the issue turns to whether Plaintiffs' claims are time-barred. In the seminal case of *Brown v. E.I. duPont de Nemours and Co., Inc.*, the Delaware Supreme Court held that in a latent injury case, the statute of limitations does not begin to run until the plaintiff is on notice of a potential tort claim.[34] This works to prolong the discovery – or the inherently unknowable – exception[35] past when the plaintiff sustains an injury[36] because the physical symptoms may be "reasonably attributable to another cause."[37]

To establish notice of a potential claim, the court can look to when "someone from the scientific community found and revealed publicly a link between physical

---

[34] *Brown v. E.I. duPont de Nemours and Co., Inc.*, 820 A.2d 362, 368 (Del. 2003).

[35] The discovery exception tolls a plaintiff's statute of limitations until the plaintiff's "discovery ends, or in the exercise of reasonable diligence, [the plaintiff] should have discovered, his injury." *Burrell v. Astrazeneca LP*, 2010 WL 3952265 (Del. Super. Sept. 20, 2010) (quoting *Ryan v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007)). The exception applies "when an inherently unknowable injury…has been suffered by one blamelessly ignorant of the act or omissions and injury complained of, and the harmful effect thereof over a period of time." *Burrell,* 2010 WL 3952265 (quoting *Layton v. Allen*, 246 A.2d 794, 798 (Del. 1968)).

[36] An injury is "sustained" for limitations purposes "when the harmful effect first manifests itself and becomes physically ascertainable." *Id.*

[37] *Brown*, 820 A.2d at 368-69.

9

condition and the exposure to the toxic substance."[38] A plaintiff only needs to be on inquiry notice of this scientific connection, not actual notice.[39] This means that it does not matter if an individual plaintiff was unaware of a link as long as the medical community is on notice and has made the link publicly known.[40]

"Inquiry notice is determined objectively" and requires only an "objective awareness of the facts giving rise to the wrong."[41] When determining whether a plaintiff has inquiry notice, "the Court must find that the facts known to the plaintiff would have 'clearly and unmistakably…led a prudent person of ordinary intelligence to inquire,' and if pursued, would have led to discovery of the elements of the claim being asserted."[42]

The case of *Burrell v. Astrazeneca* is instructive on this issue.[43] The *Burrell* plaintiffs alleged ingestion of the defendant's drug, Seroquel, caused them to acquire diabetes.[44] Plaintiffs argued that the inherently unknowable doctrine prevented the limitations period from running until the plaintiffs saw a commercial informing them of the scientific link between Seroqual and diabetes.[45] However, the Court charged

---

[38] *Id.* at 368.
[39] *Hutchinson v. Boston Sci. Corp.*, 2020 WL 5752393, at *3 (D. Del. 2020).
[40] *See Evans v. Genentech*, 2015 WL 310248, at *2 ("More so than the actual Plaintiff, it is medical science that must recognize the connection between product and malady.")
[41] *E.I. duPont de Nemours and Co. v. Medtronic Vascular, Inc.*, 2013 WL 261415, at *11 (Del. Super. Jan. 18, 2013).
[42] *Id.* (quoting *Coleman v. Pricewaterhousecoopers LLC*, 854 A.2d 838, 842 (Del. 2004)).
[43] 2010 WL 3952265 (Del. Super. Sept. 20, 2010).
[44] *Id.*
[45] *Id.*

plaintiffs with inquiry notice on the date of diagnosis.[46] The Court reasoned that "Plaintiffs would have found more than adequate publicly available information to support a link between ingestion of Seroquel and diabetes had they looked for it."[47] The publicly available information included the FDA's updated label to include a warning for diabetes as well as published information from "medical and lay sources."[48]

Similarly, in *Bredberg v. Boston Scientific Corporation*, the Court held a notice issued by the FDA linking the plaintiff's symptoms with pelvic mesh implants was sufficient publicly available information for the plaintiff to discover a potential claim.[49] The FDA notice, coupled with the plaintiff's prior mesh revision surgery, amounted to inquiry notice.[50]

The Court applies the logic in *Burrell* and *Bredberg* to the instant case. To determine when Plaintiffs were on inquiry notice, the Court only needs to look to two pertinent facts: (1) the individual Plaintiff's date of diagnosis,[51] and (2) the FDA order issued on April 1, 2020 asking manufacturers to end the sale of ranitidine-containing products "for new or existing prescriptions or OTC use in the United States."[52] As of April 1, 2020, there was sufficient publicly available information

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] 2021 WL 2228398, at *3 (Del. Super. June 2, 2021).
[50] *Id.*
[51] D.I. 499 Exs. B and C.
[52] *Id.* Ex. A ¶ 177.

such that a cancer-diagnosed Plaintiff could engage in due diligence to discover the link between ranitidine-containing products and cancer.[53]

Plaintiffs assert that it is not appropriate for the Court to determine the factual question of whether a plaintiff was aware of the April 1, 2020 FDA order at the motion to dismiss stage.[54] Despite their protestations to the contrary, Plaintiffs' argument is one of the actual notice. If this Court were writing on a clean slate, it may very well have agreed with plaintiffs. However, the Court is not writing on a clean slate. Actual notice is simply not the law in Delaware. The Court does not need to discern at what point each Plaintiff was aware of the link between ranitidine-containing products and cancer. It is sufficient that the link was made publicly available which triggered inquiry notice. The complaint alleges Plaintiffs' dates of diagnoses and the date of the April 1, 2020 FDA order. The Court must accept all well-pled facts as true.[55] On these facts Defendants' motion must be granted.

Based on the above reasons, the Court **GRANTS** Defendants' Motion to Dismiss based on the Statute of Limitations as to the claims of Plaintiffs whose cancer diagnoses were made at least two years prior to April 1, 2020 and to the claims of Plaintiffs whose cancer diagnoses were made after April 1, 2020 and were

---

[53] *See Machala*, 2017 WL 2814728, at *7 (holding that, once on inquiry notice, plaintiff could have in engaged in due diligence to determine if the drug at issue was the cause of plaintiff's injuries).

[54] D.I. 511 p.8-9.

[55] *See Sweetwater Point, LLC v. Kee*, 2020 WL 6561567, at *11 (Del. Super. Nov. 5, 2020) ("[A] court, in deciding a tolling issue on a motion to dismiss, is bound by the allegations in the pleadings.")

not filed within two years of the diagnosis.  Within thirty (30) days, the parties should submit a form of order which specifically identifies those cases subject to this Order.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

*cc:*     Counsel of Record via *File & ServeXpress*